**Carl KALE, Plaintiff, Appellant,**

**v.**

**COMBINED INSURANCE COMPANY OF AMERICA, Defendant, Appellee.**

**No. 90–1697.**

United States Court of Appeals, First Circuit.

Heard Dec. 5, 1990.

Decided Jan. 25, 1991.

Rehearing and Rehearing En Banc Denied Feb. 26, 1991.

Philip R. Olenick, Boston, Mass., with whom Paul L. Nevins, Wellesley, Mass., was on brief, for plaintiff, appellant.

Kenneth M. Bello, with whom Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., was on brief, for defendant, appellee.

Before BREYER, Chief Judge,
COFFIN, Senior Circuit Judge, and
SELYA, Circuit Judge.

SELYA, Circuit Judge.

This appeal presents an issue of first impression in this circuit. Believing, as we do, that a straightforward application of the hoary doctrine of *res judicata* is dispositive of the question raised, we affirm the district court's dismissal of plaintiff's civil action.

## I. BACKGROUND

At all times material hereto, plaintiff-appellant Carl Kale has been a citizen and resident of Massachusetts. He was formerly employed by defendant-appellee Combined Insurance Company of America (Coinco), a "citizen" of Illinois. *See* 28 U.S.C. § 1332(c) (specifying method of determining corporation's citizenship for purposes of diversity jurisdiction). In May 1983, after some two decades with Coinco and its predecessor in interest, appellant was cashiered.

Seeking vindication, Kale filed suit in the United States District Court for the District of Massachusetts. He pled federal question jurisdiction, 28 U.S.C. § 1331, and alleged that his firing violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. He adorned his ADEA complaint with pendent state-law claims for intentional infliction of emotional distress and breach of an implied covenant of good faith and fair dealing (predicated upon Coinco's alleged failure to abide by promises made in its personnel manual). The case was assigned to Judge Skinner. The state-law claim for intentional infliction of emotional distress was voluntarily discontinued at a relatively early date. Later on, Judge Skinner granted summary judgment, finding the federal statutory claim to be time-barred.

■ Inasmuch as Kale's complaint to all intents and purposes asserted only federal question jurisdiction,[1] rejection of the ADEA count seemingly ended the federal court's interest in the matter; at any rate, Judge Skinner dismissed the appended state-law claim at that juncture, writing: "Since I have disposed of plaintiff's lone federal claim, I now dismiss without prejudice [the remaining] state cause of action over which there was only pendent jurisdiction." Appellant—who does not dispute that he knew at the time that diversity of citizenship existed—did not alert the court

---

1. The appellant did mention 28 U.S.C. § 1332 in a string citation in his original complaint. *See Kale v. Combined Ins. Co.,* 736 F.Supp. 1183, 1184 n. 3 (D.Mass.1990) (describing original

complaint). But, this cursory reference was totally inadequate to put the district court on inquiry notice.

to, or make any effort to assert the presence of, diversity jurisdiction, 28 U.S.C. § 1332(a). By the same token, he neither sought reconsideration of, nor appealed, the dismissal of his state-law claim. He did appeal the entry of summary judgment on the ADEA claim. He lost. *See Kale v. Combined Ins. Co.*, 861 F.2d 746, 750–56 (1st Cir.1988). That ended the original action (which we will henceforth refer to as "*Kale I*").[2]

The waters did not remain placid for long. In May 1989, Kale filed a new suit in a Massachusetts state court, alleging a tsunami of state-law claims, e.g., breach of contract (based on the personnel manual), promissory estoppel, tortious breach of the implied good faith/fair dealing covenant. Diversity jurisdiction being apparent from the face of the record, Coinco removed the case to the federal district court. *See* 28 U.S.C. §§ 1332(a), 1441. It then moved to dismiss the action based on the preclusive effect of *Kale I.* The district court (Tauro, U.S.D.J.) granted the motion, ruling that the failure to bring the state-law claims under diversity jurisdiction in *Kale I* barred the assertion of those claims in another, later proceeding. *See Kale v. Combined Ins. Co.*, 736 F.Supp. 1183 (D.Mass.1990) (*Kale II*). This appeal followed.

## II. QUESTION PRESENTED

In framing the issue on appeal, we think it useful to begin by cataloguing what is not legitimately at issue.

1. There is no dispute that the plaintiff could have established diversity jurisdiction in *Kale I*, but failed properly to plead it. *See Kale II*, 736 F.Supp. at 1184 & n. 3. Indeed, the record does not indicate that Kale at any time alerted Judge Skinner to the existence—or even the possibility—of diversity jurisdiction.

2. Kale has never contended that his claims, or any of them, were so lacking in value as to fall below the "amount in controversy" requirement for diversity jurisdiction, *see* 28 U.S.C. § 1332(a).

3. It is beyond peradventure that the dismissal of a claim as time-barred constitutes a judgment on the merits, entitled to preclusive effect. *See, e.g., Rose v. Town of Harwich*, 778 F.2d 77, 80 (1st Cir.1985) (listing cases that illustrate trend towards giving claim-preclusive effect to dismissals based on statutes of limitations), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986); *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir.1978) (per curiam); *cf.* Fed.R.Civ.P. 41(b). Thus, the disposition of the ADEA claim in *Kale I* comprised a suitable springboard for the deployment of *res judicata.*

4. The parties agree that, given the contours of the *Kale I* record, Judge Skinner had every right to dismiss the state-law claim without prejudice once the federal cause of action was resolved on the merits. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In any event, Kale did not appeal from the dismissal order.

5. It is also uncontested that the implied contract claim in *Kale II* was pleaded and dismissed in *Kale I.* While the parties do dispute whether the other state-law claims pleaded in *Kale II* were "brought" in *Kale I*, we need not enter that debate. The judgment in *Kale I* was rendered by a federal court acting under its federal question jurisdiction. Hence, the availability of a *res judicata* defense in this case depends on the federal-law standard. *See, e.g., Cemer*, 583 F.2d at 832. Once there has been an adjudication on the merits, federal law stipulates that all claims which are "part of the same cause of action" are extinguished, whether or not actually asserted in the original action. *See Nilsen v. City of Moss Point*, 701 F.2d 556, 562 (5th Cir.1983) (en banc); *see also Lovely v. Laliberte*, 498 F.2d 1261, 1263 (1st Cir.), *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974); *cf. Fiumara v. Fireman's Fund Ins. Cos.*, 746 F.2d 87, 91 (1st Cir.1984) (same; New Hampshire law); *Isaac v. Schwartz*, 706 F.2d 15, 16 (1st Cir.1983) (same; Massachusetts

---

2. In the appeal, we also dealt with Coinco's request that the plaintiff be sanctioned. *See*

*Kale I*, 861 F.2d at 756–61. The matter of sanctions is immaterial for present purposes.

law). In other words, the doctrine of *res judicata*, in its federal formulation, insists that the decision in *Kale I* must preclude in a subsequent suit (1) all claims which were actually brought in *Kale I* and (2) all related claims, i.e., all claims arising out of the same cause of action.

6. Whatever the relationship between the state-law claims asserted, variously, in the two complaints, it is beyond cavil that, at the very least, the claims pleaded in *Kale II* could all have been joined in Kale's original complaint. *See* Fed.R.Civ.P. 8(e)(2) (a plaintiff may set forth multiple statements of claim in a single complaint); Fed. R.Civ.P. 18(a) (a party may join in a single action "as many claims ... as the party has against an opposing party").

■ Having tapered the lens of inquiry, it can be seen that this appeal, stripped to bare essentials, presents the following question: when a state-law claim, originally brought pendent to a federal claim, is dismissed without prejudice for want of subject matter jurisdiction following rejection of the joined federal claim on the merits, under circumstances where the plaintiff could have asserted an alternative jurisdictional basis but did not, and the plaintiff thereafter brings a new suit against the same defendant which includes the pendent state-law claim as well as other state-law claims which could have been pleaded in the initial suit; *quaere:* are the state-law claims in the second suit precluded by the original adjudication? Put another way, should the judgment in *Kale I* be accorded preclusive effect with respect to the claims asserted in *Kale II*, inasmuch as those claims could have been prosecuted in *Kale I* had the plaintiff elected to plead an available alternative basis for jurisdiction? [3]

## III. ANSWERING THE QUESTION

■ We answer the question presented in the affirmative, holding that when a plaintiff pleads a claim in federal court, he must, to avoid the onus of claim-splitting, bring all related state claims in the same lawsuit so long as any suitable basis for subject matter jurisdiction exists. We reach this conclusion without special deference to the decision below. The case was decided on a motion to dismiss brought under Civil Rule 12(b)(6) and appellate courts ordinarily review such rulings *de novo*. *See Gonzalez–Bernal v. United States*, 907 F.2d 246, 248 (1st Cir.1990); *see also Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990) ("[i]n the Rule 12(b)(6) milieu, an appellate court operates under the same constraints that bind the district court").[4]

### A.

■ We start our analysis with some abecedarian truths. Under a federal-law standard, the essential elements of claim preclusion are (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits. *See In re Air Crash at Dallas/Fort Worth Airport*, 861 F.2d 814, 816 (5th Cir.1988); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.1984); *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir.1982). Two elements are unarguably in evidence here. First, there was a final judgment in *Kale I*, comprising an adjudication on the merits for purposes of claim preclusion. *See supra* p. 1164. Second, there was an absolute identity of parties in *Kale I* and *Kale*

---

**3.** It makes no theoretical difference that *Kale II* was removed to a federal venue. Had Coinco not removed the case, the result in the state superior court should be identical to the result reached here. After all, *Kale I* ended in a federal judgment and Massachusetts law provides for the application of federal *res judicata* principles when the "preclusive effect of a Federal court's judgment" is at issue. *See Anderson v. Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. 444, 440 N.E.2d 1164, 1167 (1982).

**4.** Even if the submission of counsel's affidavit, containing copies of relevant *Kale I* materials, effectively converted the motion into a summary judgment motion, *see* Fed.R.Civ.P. 12(b), the standard of appellate review would remain the same. *See, e.g., Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990) (appellate review of summary judgment is plenary); *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989) (same).

*II.* Any hope of avoiding preclusion must, therefore, rest with the least mechanical of the three requirements: identity of cause of action.

■ Concededly, the phrase "identity of cause of action" is more easily stated than defined. *See Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 944 (7th Cir.1981). A single cause of action can manifest itself in an outpouring of different claims, based variously on federal statutes, state statutes, and the common law. *See Athlone*, 746 F.2d at 983. Yet, such heterogeneity alone does not work an exception to the rule of preclusion. So long as different theories of recovery, howsoever prolific, derive from the same cause of action, the requisite identity is achieved if, and to the extent that, all such theories concern "the same operative nucleus of fact." *Lovely*, 498 F.2d at 1263. In other words, as long as the "new complaint grows out of the same 'transaction or series of connected transactions' as the old complaint," *Isaac*, 706 F.2d at 17 (quoting Restatement (Second) of Judgments § 24), the causes of action are considered to be identical for *res judicata* purposes. Thus, if the claims asserted in *Kale I* and *Kale II*, respectively, were sufficiently related, that is, if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong, the two suits advanced the same cause of action notwithstanding any differences in remedies sought or theories of recovery pleaded. *A fortiori*, our focus must not be the theoretical raiment in which the claims are robed, but "whether the underlying facts of both transactions were the same or substantially similar." *Manego v. Orleans Bd. of Trade*, 773 F.2d 1, 6 (1st Cir.1985), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986).

■ In light of the foregoing, it necessarily follows that a particular legal theory not pressed in the original suit will nonetheless be precluded in the subsequent one if it prescinds from the same set of operative facts. *See, e.g., Cemer*, 583 F.2d at 832 ("Where two successive suits seek recovery for the same injury, a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit."). In this way, the law prevents a litigant from claim-splitting, requiring that he "assert all his various legal theories and factually related allegations the first time he brings suit." *Rose*, 778 F.2d at 79.

■ We turn from the general to the specific. It is nose-on-the-face plain that the claims in *Kale II* stemmed from the same transactional hub as the claims previously mounted in *Kale I*. Though dressed in somewhat different garb, the claims all sought recovery in consequence of the same occurrence: defendant's unilateral termination of the plaintiff's employment. The differences were differences in the theories of liability and the selection of remedies, not differences in the fundamental cause of action. As the district court found, there was an identity of cause of action. *See Kale II*, 736 F.Supp. at 1185–86 & n. 7.

It appears, then, that all the elements of classic claim preclusion are present in this situation. Unless *res judicata* is to be robbed of its doctrinal significance, appellant had an obligation to cluster his theories of recovery in *Kale I*, by whatever necessary jurisdictional means, or else forever hold his peace.

### B.

Existing precedent, though scanty, supports such a preclusionary result. The only case directly in point—and it could hardly be more so—is *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361 (7th Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). There, the situation was virtually identical. Shaver, a discharged employee, sued for age discrimination in the district court, asserting federal question jurisdiction and joining pendent state claims. *Id.* at 1363. The district court granted summary judgment in defendant's favor, finding Shaver's ADEA claim untimely. *Id.* The court declined to exercise pendent jurisdiction over the state

claims and dismissed them. *Id.* Shaver, who realized "that diversity jurisdiction existed," *id.* at 1364 n. 1, made no effort "to allege an alternative jurisdictional basis in an attempt to pursue his state law contract claims" in the original action. *Id.* at 1363. Instead, he brought a fresh suit in the state court alleging a variety of state-law claims. *Id.* As here, the defendant removed the case to the federal district court pursuant to 28 U.S.C. §§ 1332, 1441.

The district court in the second *Shaver* case granted summary judgment on grounds independent of *res judicata.* The Seventh Circuit, however, went directly for the jugular, holding squarely that:

> Because Shaver neglected to assert the existence of diversity jurisdiction in his prior action in order to pursue his breach of contract claims, both the strict test of and the policy behind the *res judicata* doctrine bars the present action.

*Shaver,* 840 F.2d at 1368; *see also* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4412 at 67–68 n. 0.6 (Supp.1990) (discussing *Shaver* with approval).

Appellant does not dispute that *Shaver* is on all fours with his case. Rather, he claims it was wrongly decided. We do not agree. In our view, the reasoning of the *Shaver* majority, 840 F.2d at 1364–68, is impeccable. We adopt it enthusiastically, without exegetic discussion. There is simply no point in attempting to reinvent so well-fashioned a wheel.

Appellant also essays an end run around *Shaver,* arguing that, even if *Shaver* is good law, he could not reasonably have been expected to anticipate the holding.[5] Whatever the merits of the Seventh Circuit's opinion, appellant's thesis runs, a grave injustice would result from "retroactively" foisting the *Shaver* rule upon him. The plea holds little water. While the circumstances of Kale's case are admittedly unusual, the doctrine governing its resolution is quite mature and unencumbered by contradictions or ambiguities in respect to the question at hand. Rather than emanating from some dark interstice of the law,

the district court's holding in *Kale II* was entirely predictable. So, too, was the outcome in *Shaver.* There is no unfairness, under all the circumstances, in declining to extricate the plaintiff from a self-dug hole.

## C.

■ Appellant is not short of fall-back positions. He contends that, even if the rule is as we envision it, his case is outside the rule because Judge Skinner dismissed the state-law claim in *Kale I* "without prejudice." This contention represents an unvarnished attempt to squeeze an elephant's foot into a pony's shoe. To be sure, claim preclusion can be avoided where "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action." Restatement (Second) of Judgments § 26(1)(b) (1982). But, the exception does not pertain here. Judge Skinner's use of the phrase "without prejudice" was supererogatory, because the dismissal of pendent claims on jurisdictional grounds is always without prejudice. *See* Fed.R. Civ.P. 41(b); *see also United Mine Workers,* 383 U.S. at 726–27, 86 S.Ct. at 1139; *Rose,* 778 F.2d at 79. Thus, the phrase "without prejudice" added nothing to what transpired. In any event, the phrase could not have constituted an express reservation, as Kale had withheld from the judge the very information which would have made such a reservation meaningful. *See infra* Part III(D).

## D.

■ Appellant's next initiative hawks a further exception to claim preclusion. In general, the rule requiring all claims arising from a single cause of action to be asserted in a single lawsuit will not apply if the plaintiff was unable to assert a particular claim or theory in the original case "because of the limitations on the subject matter jurisdiction of the courts." Restatement (Second) of Judgments § 26(1)(c) (1982). This jurisdictional competence exception permits the maintenance in a second suit of a claim stemming from the

---

**5.** *Shaver* was decided well after Judge Skinner dismissed the state-law claim in *Kale I.*

cause of action previously sued upon "if a jurisdictional obstacle has precluded raising that issue in the first action." *Pasterczyk v. Fair*, 819 F.2d 12, 14 (1st Cir.1987).

■ For the jurisdictional competence exception to flower, it must be shown that the claim pressed in the second suit could not have been asserted and resolved in the first suit by reason of limitations on the first court's jurisdiction. This determination must be made by the second court, giving preclusive effect to any jurisdictional determinations made by the first court (so long as the requirements of collateral estoppel, i.e., issue preclusion, have been met).[6] Accordingly, when *Kale II* arose, it was up to Judge Tauro to determine whether the nonfederal claims could have been litigated in *Kale I* if the plaintiff had chosen to engage the district court's diversity jurisdiction, and if so, the legal effect of that fact.

■ Judge Tauro's response was patently correct on all scores. The existence of an alternate hook on which federal court jurisdiction could have been hung, permitting state-law claims to be freely litigated in a federal forum, rendered the competency exception inapplicable. After all, for it to pertain, the jurisdictional obstacle to joinder of all claims must be attributable to limitations on the first court's power to hear and decide a claim rather than to a party's contrivance.

### E.

■ There is one last arrow in appellant's quiver. He importunes that, regardless of ordinary rules of *res judicata*, the equities demand that his current suit be given free passage. This entreaty overlooks, however, that the doctrine of *res judicata* is no "mere matter of practice or procedure," but "a rule of fundamental and substantial justice, of public policy and of

private peace, which should be cordially regarded and enforced by the courts." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (citation omitted). Although we have recognized the existence of judicial power to make an "occasional exception" to claim preclusion in order "to prevent unusual hardship," *Rose*, 778 F.2d at 82, this case does not fit that narrow mold. Appellant knew of the existence of diversity jurisdiction in *Kale I* and chose not to assert it. It was this choice—and this choice alone—that led to Judge Skinner's order of dismissal. In short, appellant's splitting of his claims was voluntary: he had a full and fair opportunity to litigate all his claims in *Kale I*, but declined to avail himself of it.

We see no injustice in applying time-honored principles of claim preclusion in such a situation. Whenever a litigant decides to enter the court system to seek justice, he must play by the rules. Any idiosyncratic unfairness that may result from the consistent and straightforward application of preclusion principles is, we think, far outweighed by the systemic benefits which flow from steadfast adherence to so salutary a doctrine. *See Moitie*, 452 U.S. at 401–02, 101 S.Ct. at 2429–30. As *Rose* teaches:

> [I]f courts relaxed the principles of claim preclusion every time it appeared that a litigant had a strong claim 'on the equities,' the doctrine would fail to serve its purposes of promoting judicial economy and repose. In some individual instances a fairer result might be achieved, but more often the litigation of stale claims and the resulting uncertainty would mean injustice or hardship.

778 F.2d at 82. There is no basis for abandoning the rules in this case.

---

**6.** There was no issue preclusion applicable to the defense raised in *Kale II.* Since Judge Skinner was not made aware of the existence of diversity jurisdiction, his dismissal could only have been based on the special nature of pendent jurisdiction. Thus, the only preclusive effect the dismissal could have would be to forestall litigation of that particular issue, not the

broader issue of whether jurisdiction could have been achieved in some other way. So, while *Kale I* finally determined that there was no pendent jurisdiction for the state-law claim, it did not in any way purport to determine that nonfederal claims could not otherwise have been brought within the district court's subject matter jurisdiction.

## IV. CONCLUSION

We need go no further. Appellant's failure to assert diversity jurisdiction when it unarguably existed, and he knew as much, gave the judgment in *Kale I* wide-ranging preclusive effect. *Kale II*, therefore, exemplified the classic claim preclusion paradigm. Because of this, and because the case did not fall within an exception to the normal rules of *res judicata*, Judge Tauro's dismissal order was wholly appropriate.

*Affirmed.*

## ORDER OF COURT

The petition for rehearing en banc filed by plaintiff-appellant Carl Kale is, under this court's internal operating procedures, considered both by the panel and by the full court. Panel rehearing is hereby *denied* for the following reasons.

■ Appellant's argument that his second action should survive because his pendent state-law claim in the first action was dismissed "without prejudice" was adequately answered in the panel opinion at p. 1167. Appellant's claim that the *res judicata* effect of that language was broader than the panel indicated overlooks that appellee, having won, could not appeal the "without prejudice" dismissal and thus could not be bound by that characterization to the extent urged by appellant. *See In re Public Serv. Co.*, 898 F.2d 1, 2 (1st Cir.1990) ("a party cannot appeal a judgment entered in its own favor"); *Bath Iron Works Corp. v. Coulombe*, 888 F.2d 179, 180 (1st Cir. 1989) (similar); *see also Sierra Club v. Marsh*, 907 F.2d 210, 213 (1st Cir.1990) ("appellant, having prevailed, could not have appealed [the order]").

■ Insofar as appellant urges, for the first time, new theories, variously characterized in his petition as "waiver," "acquiescence" and "estoppel by judgment," based on the fact that the defendant knew all along that the plaintiff could have asserted diversity jurisdiction, the contentions are not properly before us. The appellant did not make the contentions below. He did not make them in his appellate briefs. He did not make them at oral argument. He did not request leave, after oral argument, to file a supplemental brief. The points are, therefore, foreclosed. "[A] party cannot be permitted to raise a new issue for the first time on a petition for rehearing in the court of appeals." *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 397 (1st Cir.1990) (opinion denying rehearing).

The petition for panel rehearing is *denied.*