St. Hilaire v. FDIC                    CV-92-511-SD  01/17/95
                    UNITED STATES DISTRICT COURT FOR THE

                         DISTRICT OF NEW HAMPSHIRE


St. Hilaire and
 Associates, Inc., d/b/a
 Corso Electric Co.;
Albert J. St. Hilaire


     v.                                     Civil No. 92-511-SD


Federal Deposit Insurance
 Corporation (FDIC), as Receiver for
 Numerica Bank, FSB;
Resolution Trust Corporation,
 in its capacity as Conservator
 for HomeBank Federal Savings
 Association


                            O R D E R


     In this civil action, plaintiffs assert claims for breach of

an implied covenant of good faith and fair dealing, breach of a

joint venture agreement, and breach of an oral contract against

the Federal Deposit Insurance Corporation as Receiver for

Numerica Savings Bank (FDIC) and the Resolution Trust Corporation

(RTC) as Conservator for HomeBank Federal Savings Association.

     Presently before the court are FDIC's motion for summary

judgment, to which no objection has been filed, and two motions

for summary judgment filed by RTC, both of which are objected to

by plaintiffs.[1]  Also before the court is RTC's assented-to motion to enlarge the discovery period.

## Background

Plaintiff Albert J. St. Hilaire "began a business relationship with Numerica Bank on or about 1979."  Affidavit of Albert J. St. Hilaire ¶ 4 (attached to Plaintiffs' Objection to RTC's Motion for Summary Judgment).  St. Hilaire asserts that "[d]uring the 1980's agents of Numerica solicited business from me and indicated that financing would be available if I produced a business opportunity that could be beneficial to myself and the bank."  Id.

St. Hilaire states,

> On or about 1987, I brought Corso Electric to the attention of agents of Numerica because I thought it was a good business and I knew that the Chairman of the Board of Numerica had expertise in the electrical contracting business.
> After Numerica's agents and officers reviewed the financial data on Corso Electric Co. I was encouraged to buy the company. Numerica agreed to provide full financing for the acquisition and operation of the company, which it did. . . .

Id. ¶¶ 5-6.

---

[1]RTC's first motion for summary judgment (document 32) was originally filed as a motion to dismiss.  Said motion was converted to one for summary judgment by this court's order of June 28, 1994.

2

In order to finance the purchase of Corso Electric, St. Hilaire, in his capacity as president of St. Hilaire & Associates, Inc., signed a commercial term note in the amount of $200,000 and a demand note in the amount of $100,000, both dated December 29, 1987.  See Commercial Term Note (attached to FDIC's motion as Exhibit B) and Demand Note (attached to FDIC's motion as Exhibit C).  Each note was secured by a security agreement signed by Albert J. St. Hilaire as president of St. Hilaire & Associates, and a guarantee agreement signed by "Albert J. St. Hilaire".  See Security Agreement (attached to FDIC's motion as Exhibit D) and Guarantee Agreement (attached to FDIC's motion as Exhibit E).

St. Hilaire asserts that "[o]n or about 1988 the agents that I dealt with at Numerica contacted me in order to let me know that they were now affiliated with HomeBank.  They requested that the financing provided to St. Hilaire and Associates, Inc. be transferred from Numerica to HomeBank."  St. Hilaire Affidavit ¶ 8.  He further asserts that he "was assured that the change in financing from Numerica to HomeBank would not in any way alter the terms of the present financing with Numerica."  Id. ¶ 9.

The notes in question were subsequently transferred from Numerica to HomeBank.  Pursuant thereto, St. Hilaire as president of St. Hilaire & Associates, Inc., signed a new commercial term

3

note in the amount of $200,000 and a new demand note in the amount of $250,000. See Commercial Term Note, dated July 1, 1988 (attached to FDIC's motion as Exhibit F) and Demand Note, dated August 5, 1988 (attached to FDIC's motion as Exhibit G). Both promissory notes were secured by a single security agreement signed by St. Hilaire as president of St. Hilaire & Associates (attached to FDIC's motion as Exhibit H), and by separate guarantee agreements signed by "Albert J. St. Hilaire" (attached to FDIC's motion as Exhibit I).

St. Hilaire asserts that

> in the summer of 1991, HomeBank refused to extend further credit to the corporation despite the fact that the corporation was current in its monthly payments to HomeBank. HomeBank's termination of credit resulted in the corporation's suppliers['] termination of credit to the corporation. Without HomeBank's credit, the corporation would not meet its obligations to its suppliers. Therefore, St. Hilaire and Associates, Inc. had no choice but to cease doing business which resulted in St. Hilaire and Associates['] not being able to meet its obligations to HomeBank.

St. Hilaire Affidavit ¶¶ 11-12.

On October 10, 1991, the Office of Thrift Supervision (OTS) appointed FDIC as receiver for Numerica and RTC as receiver for HomeBank Federal Savings Bank (Homebank FSB). On that same date RTC, acting in its capacity as receiver of HomeBank FSB, obtained approval from OTS for the organization of a new federally

4

chartered bank, HomeBank Federal Savings Association (HomeBank FSA). See OTS Order No. 91-618 (attached to RTC's Motion for Summary Judgment as Exhibit A). RTC was appointed as conservator of the newly formed HomeBank FSA. Id.

Also on October 10, 1991, RTC, in its capacity as receiver for HomeBank FSB, entered into a Purchase & Assumption Agreement with HomeBank FSA whereby certain HomeBank FSB assets and liabilities were transferred to HomeBank FSA. The promissory notes and related security and guarantee agreements described herein were among the assets transferred to HomeBank FSA.

On March 4, 1992, RTC, in its capacity as conservator for HomeBank FSA, filed a six-count complaint in Maine Superior Court against St. Hilaire & Associates and Albert J. St. Hilaire to recover on the notes. See Complaint (attached to RTC's motion as Exhibit B). In their answer to the complaint, St. Hilaire and the corporation asserted various affirmative defenses. Said defenses were based, inter alia, on St. Hilaire's contention that bank officials represented to him that he would not be personally liable for the notes.

The action initiated by RTC was subsequently removed to the United States District Court for the District of Maine, where summary judgment was entered against the defendants on all six counts. See RTC v. St. Hilaire & Assocs., Inc., Civ. No. 92-152-

5

P-C (D. Me. Dec. 11, 1992) (attached to RTC's motion as Exhibit D). The court ruled, inter alia, that "St. Hilaire & Associates is liable for the debt and penalties under each promissory note as a matter of law," id. slip op. at 6, and that, under the terms of the guarantee agreements, Albert J. St. Hilaire is "personally liable, as a matter of law, for the full amount in loans borrowed by the Corporate Defendant, interest accrued, and late fees," id. slip op. at 8-9. Judgment was so entered against the defendants on December 23, 1992. See RTC v. St. Hilaire & Assocs., Inc., Civ. No. 92-152-P-C (D. Me. Dec. 23, 1992) (attached to RTC's motion as Exhibit C).

Plaintiffs filed the instant action in this court on October 5, 1992.

## Discussion

### 1. Summary Judgment Standard

Under Rule 56(c), Fed. R. Civ. P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

> Summary judgment is a procedure that
> involves shifting burdens between the moving

6

and the nonmoving parties.  Initially, the onus falls upon the moving party to aver "'an absence of evidence to support the nonmoving party's case.'"  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  Once the moving party satisfies this requirement, the pendulum swings back to the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)) . . . .

LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994).  In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the nonmoving party's favor.  Anderson, supra, 477 U.S. at 255.

2.  FDIC's Motion for Summary Judgment

FDIC moves for summary judgment on the ground that plaintiffs' claims are barred by the doctrine of estoppel set forth in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942) and 12 U.S.C. § 1823(e).[2]  No objection to FDIC's motion has been filed

_____

[2]Section 1823(e) provides:

No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository

7

by the plaintiffs.

The D'Oench doctrine and section 1823(e) prohibit "a party from relying on any unwritten agreement to defeat a claim by, or assert a claim against, FDIC." New Bank of New England, N.A. v. Callahan, 798 F. Supp. 73, 76-77 (D.N.H. 1992). "The parties' reason for failing to exhibit the agreement in the bank's records is irrelevant, as is the FDIC's actual knowledge of the agreement." FDIC v. Longley I Realty Trust, 988 F.2d 270, 272 (1st Cir. 1993) (citing Timberland Design, Inc. v. First Serv. Bank for Sav., 932 F.2d 46, 48-50 (1st Cir. 1991)).

Plaintiffs assert claims against FDIC for breach of implied covenant of good faith and fair dealing, breach of a joint venture agreement, and breach of an oral contract. Each of these

---

institution, shall be valid against the [FDIC] unless such Agreement--
   (1) is in writing,
   (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
   (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
   (4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(3) (1989).

8

claims is based on the plaintiffs' "understanding" that the purchase of Corso Electric Co. "would only involve Mr. St. Hilaire in his corporate capacity without any personal guaranty from Mr. St. Hilaire," Complaint ¶ 15, and on "representations" and "assurances" by bank officials that transferring the loans from Numerica to HomeBank would not alter the terms or status of the financing, id. ¶¶ 19-23. Plaintiffs further assert that

> HomeBank, despite its prior promise to fund the operation of Corso Electric and knowing that Corso Electric was having problems collecting receivables which were due it, refused to extend any further credit to St. Hilaire & Associates, Inc. even though the corporation was current with respect to payment of its monthly obligations to HomeBank.

Id. ¶ 25.

The written agreements signed by the parties reveal no such assurances, representations, promises, or agreements. Further, FDIC Investigations Specialist John E. Tillotson states in his affidavit,

> I have diligently searched the minutes and the files of Numerica for 1988, and they contain no evidence that The Board of Directors, The Senior Loan Committee or the Loan Committee of Numerica approved any such alleged representations that a refinancing by Home Bank Federal Savings Association (Home Bank) of financing originally provided by Numerica would be provided without any personal obligation of, or personal guarantee by Albert J. St. Hilaire. Nor do the said minutes contain any evidence of a joint

9

> venture between Numerica and Home Bank on the one hand and the plaintiffs on the other regarding Corso Electric.

Affidavit of John E. Tillotson ¶ 6 (attached to FDIC's motion as Exhibit A).

On the basis of the evidence before it, the court finds that plaintiffs' claims against FDIC are based entirely on unwritten "understandings," "representations," "assurances," "agreements," and "promises."  Accordingly, the court rules that said claims are barred under D'Oench and under 12 U.S.C. § 1823(e).[3]

FDIC's motion for summary judgment is granted.


3.  RTC's Motions for Summary Judgment

    a.  RTC as Conservator is an Improper Party

The first issue raised by RTC's motions for summary judgment is whether RTC, in its capacity as conservator of HomeBank FSA, is a proper party to this action.  Defendant RTC maintains that summary judgment must be granted in its favor because plaintiffs' claims are only enforceable against RTC in its capacity as

---

[3]In so ruling, the court recognizes that a duty of good-faith performance and fair dealing is implied in all contracts under New Hampshire law. Renovest Co. v. Hodges Dev. Corp., 135 N.H. 72, 81, 600 A.2d 448, 454 (1991).  Nevertheless, under the circumstances of this case, where plaintiffs' claim that said duty has been breached is based on defendant's alleged failure to comply with certain unwritten agreements and promises rather than on defendant's abuse of its discretion in the performance of written contracts between the parties, plaintiffs' claim is barred by D'Oench and by section 1823(e).

10

receiver for HomeBank FSB.[4]

The RTC was established under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183, as "part of the federal government's response to the savings-and-loan crisis that rocked the nation in the latter half of the last decade." Sunshine Development, Inc. v. FDIC, 33 F.3d 106, 111 (1st Cir. 1994). Under FIRREA, the RTC may act in one of three separate and distinct capacities: (1) in its corporate capacity, the RTC is responsible for the management and resolution of cases involving certain federally insured depository institutions, 12 U.S.C. § 1441a(b)(3) (Supp. 1994); (2) in its capacity as a receiver, the RTC may place "an insured depository institution in liquidation and proceed to realize upon the assets of the institution," 12 U.S.C. § 1821(d)(2)(E) (Supp. 1994), or "organize a new Federal savings association to take over such assets or such liabilities as the [RTC] may determine to be appropriate," 12 U.S.C. § 1821(d)(2)(F)(i); and (3) in its capacity as a conservator, the RTC may "take such action as may

---

[4]Plaintiffs maintain that RTC waived its improper party argument under Rule 12(h)(1), Fed. R. Civ. P., by failing to raise it in an earlier motion to dismiss. Plaintiffs' argument rests, however, on the erroneous conclusion that RTC is moving to dismiss this action for lack of personal jurisdiction under Rule 12(b)(2). Instead, the instant motion, prior to its conversion to one for summary judgment, was properly filed under Rule 12(b)(6). Accordingly, RTC's improper party argument has not been waived and may be considered by the court as a basis for granting RTC's motion for summary judgment.

be--(i) necessary to put the insured depository institution in a sound and solvent condition; and (ii) appropriate to carry on the business of the institution and preserve and conserve the assets and property of the institution," 12 U.S.C. § 1821(d)(2)(D).[5]

Under the "separate capacities" doctrine, it is well established that the RTC, when acting in one capacity, is not liable for claims against the RTC acting in one of its other capacities.  See, e.g., FDIC v. Roldan Fonseca, 795 F.2d 1102, 1109 (1st Cir. 1986) ("'Corporate' FDIC and 'Receiver' FDIC are separate and distinct legal entities" and "Corporate FDIC is not liable for wrongdoings by Receiver FDIC"); Howerton v. Designer Homes By Georges, Inc., 950 F.2d 281, 283 (5th Cir. 1992) ("The RTC, in its corporate capacity, is not liable for claims against the RTC in its capacity as conservator or receiver.").

In this action, RTC was appointed as receiver for HomeBank FSB on October 10, 1991.  As such receiver, RTC applied for and obtained authority from OTS to organize a new federal mutual savings association, HomeBank FSA.  See OTS Order No. 91-618 (attached to RTC's Motion for Summary Judgment as Exhibit A). RTC also obtained authority to transfer the assets and liabilities of HomeBank FSB to Homebank FSA "as determined to be

_____

[5]When acting as a receiver or conservator of a failed depository institution, the RTC has "the same powers and rights to carry out its duties" as the FDIC has when acting in such capacities.  12 U.S.C. § 1441a(b)(4)(A) (Supp. 1994).

12

appropriate by the RTC." Id. at 2. In addition, RTC was appointed as conservator of the newly chartered bank. Id. at 3.

The notes and related security and guarantee agreements between plaintiffs and HomeBank FSB were among the assets transferred to HomeBank FSA. However, HomeBank FSB's liabilities to its general creditors remained with RTC as receiver. See Notice to Creditors of HomeBank FSB (attached to Affidavit of Richard D. Lemcoe as Exhibit A).[6]

Plaintiffs, as alleged creditors of HomeBank FSB, were notified by letter dated January 14, 1993, that any claims they had against the failed bank must be presented to RTC as receiver pursuant to 12 U.S.C. § 1821(d). See Letter from RTC to Albert St. Hilaire (attached to Lemcoe Affidavit as Exhibit C). Said notification was consistent with FIRREA, which provides in relevant part that only the RTC as receiver has authority to determine claims against the failed bank. See 12 U.S.C. § 1821(d)(3). Plaintiffs maintain that they complied with the required administrative claims review process when their attorney, Gary H. Reiner, acting on their behalf, mailed a Proof

---

[6]As further support for its position that RTC as conservator did not assume the liabilities at issue in this action, defendant RTC cites to the Purchase and Assumption Agreement utilized by RTC as receiver for HomeBank FSB to transfer certain assets and liabilities to RTC as conservator of HomeBank FSA. Said agreement is not, however, attached as an exhibit to either of RTC's motions.

13

of Claim form to RTC on January 23, 1992. See Affidavit of Gary H. Reiner ¶ 3 (attached to Plaintiffs' Objection to RTC's Motion to Dismiss).

The claims asserted by plaintiffs in this action are based on the alleged conduct of HomeBank FSB's officers and agents before the bank was declared insolvent and RTC was appointed as its receiver. There is no evidence before the court that RTC as conservator of the newly formed HomeBank FSA assumed any liability for the acts of HomeBank FSB's agents prior to said bank's failure. Accordingly, the court finds that RTC as conservator of HomeBank FSA is not liable for the claims set forth in plaintiffs' complaint. E.g., FSLIC v. Mackie, 962 F.2d 1144, 1150 (5th Cir. 1992) (summary judgment properly granted in favor of newly formed bank on claims based upon alleged misconduct of a failed bank where the new bank "did not assume any of the [failed bank's] liabilities; it only purchased the assets"). Instead, the evidence shows that said claims should have been brought, if at all, against RTC in its capacity as receiver for HomeBank FSB. Defendant RTC's motion for summary judgment is therefore granted.[7]

---

[7]As RTC in its capacity as receiver for HomeBank FSB is not a party to this action, the court does not here consider whether plaintiffs have properly complied with the administrative claims process under 12 U.S.C. § 1821(d) or whether plaintiffs' claims against RTC as receiver are barred under D'Oench and 12 U.S.C. § 1823(e).

14

b.  Res Judicata

Defendant RTC's second motion for summary judgment asserts that plaintiffs' claims are barred by the doctrine of res judicata.  Said motion has been rendered moot by the court's finding that the RTC as conservator of HomeBank FSA is not liable for the claims set forth in plaintiffs' complaint.

However, assuming arguendo that plaintiffs' claims could be brought against the RTC as conservator, the court finds that said claims are barred under the doctrine of res judicata as a result of the final judgment entered in RTC v. St. Hilaire & Assocs., Inc., supra, Civ. No. 92-152-P-C (Order of Dec. 23, 1992).

Federal law governs the res judicata effect of a judgment "rendered by a federal court acting under its federal question jurisdiction." Kale v. Combined Ins. Co. of America, 924 F.2d 1161, 1164 (1st Cir.), cert. denied, ___ U.S. ___, 112 S. Ct. 69 (1991).  See also Gonzalez v. Banco Central Corp., 27 F.3d 751, 755 (1st Cir. 1994).  Under 12 U.S.C. § 1819(b)(2)(A), "all suits of a civil nature at common law or in equity to which the [RTC], in any capacity, is a party shall be deemed to arise under the laws of the United States."  Accordingly, federal law must be employed to determine the res judicata effect of the judgment entered in RTC v. St. Hilaire & Assocs., Inc., supra, Civ. No. 92-152-P-C (Order of Dec. 23, 1992).

The accepted formulation of res judicata

15

> for federal court use teaches that "a final
> judgment on the merits of an action precludes
> the parties or their privies from
> relitigating issues that were or could have
> been raised in that action." Accordingly,
> the elements of res judicata are (1) a final
> judgment on the merits in an earlier suit,
> (2) sufficient identicality between the
> causes of action asserted in the earlier and
> later suits, and (3) sufficient identicality
> between the parties in the two suits.

Gonzalez, supra, 27 F.3d at 755 (quoting Allen v. McCurry, 449

U.S. 89, 94 (1980)). See also Aunyx Corp. v. Canon U.S.A., Inc.,

978 F.2d 3, 6 (1st Cir. 1992), cert. denied, ___ U.S. ___, 113 S.

Ct. 1416 (1994); Kale, supra, 924 F.2d at 1165.

In the earlier action between RTC as conservator of HomeBank

FSA, St. Hilaire & Associates, and Albert J. St. Hilaire, summary

judgment was entered for the RTC on all of its claims. It is

well established that "[s]ummary judgment constitutes a final

judgment on the merits for purposes of res judicata." Dowd v.

Society of St. Columbans, 861 F.2d 761, 764 (1st Cir. 1988).

Further, the claims asserted in both the earlier action and the

instant action "derive from a common nucleus of operative facts."

Gonzalez, supra, 27 F.3d at 755. Accordingly, the claims

asserted against RTC as conservator of HomeBank FSA in the

instant action are barred by the doctrine of res judicata.


Conclusion

For the reasons set forth herein, FDIC's motion for summary

16

judgment (document 41) is granted, and RTC's first motion for summary judgment (document 32) is granted. RTC's second motion for summary judgment (document 31) and RTC's assented-to motion to enlarge the discovery period (document 46) are denied as moot. The clerk shall enter judgment accordingly.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

January 17, 1995

cc:  Gary H. Reiner, Esq.
     Simon C. Leeming, Esq.
     Carol J. Holahan, Esq.
     Ricky L. Brunette, Esq.10