Dr. Ben BRANCH, Trustee of Bank of
New England Corporation, et al.

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver of New Bank
of New England Corporation, N.A.

Civil Action No. 91–10976–RGS.

United States District Court,
D. Massachusetts.

Aug. 6, 1998.

Hugh M. Ray, Andrews & Kurth, Dallas,
TX, Van Oliver, James D. Higgason, John C.
Wynne, O. Clayton Lilienstern, Lawrence B.
Schreve, Andrews & Kurth, Houston, TX,
Thomas R. Kline, Andrews & Kurth, Wash-
ington, DC, for plaintiff.

Lisa Miller, F.D.I.C., Washington, DC,
Robin Russell, Bank of NE Corp., Trustee's
Office, Boston, MA, for New Bank of New
England, N.A.

Deborah S. Griffin, Peabody & Arnold
L.L.P., Boston, MA, Lisa Miller, F.D.I.C.,
Washington, DC, for New Connecticut Bank
& Trust Co., N.A. and New Maine Nat.
Bank.

William W. Abendroth, Boston, MA, for
Fleet Bank-NH.

Deborah S. Griffin, Peabody & Arnold
L.L.P., Boston, MA, Thomas A. Schulz,
Charles L. Cope, Wendy Kloner, Tom K.
Reeves, Susan K. Bank, Patricia E. Davison,

William Small, Ann S. DuRoss, Daniel H. Kurtenbach, F.D.I.C., Washington, DC, for F.D.I.C.

Dennis J. Kelly, Burns & Levinson, Boston, MA, for Dennis J. Kelly.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

On March 20, 1998, Dr. Ben Branch, in his capacity as the Bankruptcy Trustee for Bank of New England Corporation (BNEC), filed a motion for summary judgment on the FDIC's counterclaims (# 475), arguing they are barred for reasons of res judicata (claim preclusion).[1] The FDIC has opposed the motion on its merits.[2] On June 10, 1998, a hearing was held on the motion.

### FACTS

The material facts are not disputed. On July 7, 1991, BNEC filed a Chapter 7 petition. The bar date for filing a proof of claim against BNEC's estate was June 19, 1991.[3] On June 18, 1991, the FDIC, in its capacity as the receiver for three of BNEC's failed subsidiary banks, filed several timely proofs of claims involving matters unrelated to this dispute.

On January 13, 1992, Branch filed this Complaint against the FDIC and Fleet Bank of Massachusetts, N.A., alleging that certain BNEC assets were fraudulently transferred to the then solvent subsidiary banks. On July 7, 1993, the FDIC responded with the counterclaims at issue. The damages alleged in the counterclaims, however, did not figure in the proofs of claims that the FDIC had filed in the Bankruptcy Court. On July 27, 1993, Branch answered the counterclaims by asserting that they should be dismissed because the FDIC had failed to file a corresponding proof of claim before the bankruptcy bar date expired. Branch repeated this defense in his January 16, 1996 Answer to the FDIC's Amended Counterclaims.

On December 19, 1997, the FDIC filed a motion in the Bankruptcy Court seeking to amend its proofs of claims to conform to the damages asserted in the counterclaims. On February 10, 1998, the Bankruptcy Court denied the FDIC's motion stating:

THE COURT: The problem with the FDIC's position is that they are hardly a stranger to these proceedings. They have been active since I came on board in '91. Seldom a day passed, it seemed, when the FDIC wasn't in here objecting to something. Sometimes they were in here objecting to nothing, but the FDIC was here repeatedly, and they knew what was going on. They were in the best position to act promptly and diligently in filing what they now want to file as an amendment.

I would think the last possible time that FDIC had a chance of obtaining permission from me to amend their claim was if this had been brought up at the time that I received the estimation motions and the interim distribution motion. For the first time in a long time FDIC was silent. I don't think you can now try to amend its claims. It's too late. The motion is denied.

The FDIC did not appeal the Bankruptcy Court's February 10th Order and has not

---

1. The parties agree that the counterclaims at issue do not include the "Accounts Counterclaims" which are the subject of a settlement agreement that has not yet been consummated.

2. The FDIC also makes the procedural argument that the motion should be struck because it was filed after the deadline set for submission of summary judgment motions and because, contrary to the court's Local Rules, it did not contain a certificate of consultation and it combined the motion and memorandum in one document. It is undisputed, however, that the Bankruptcy Court Order which forms the basis for the motion was issued only after the summary judgment deadline expired and that the conference required by Local Rule 7.1(A)(2) did in fact occur. While the Local Rules do require that the motion be filed as a separate pleading, that omission is readily curable.

3. Rule 3002 of the Bankruptcy Code, entitled "Filing Proof of Claim or Interest" states:

(a) Necessity for Filing. An unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed . . . .
(c) Time for Filing. In a chapter 7 liquidation, . . . a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called. . . .

attempted to file its claims in the Bankruptcy Court as "tardy" claims.

## DISCUSSION

■ Branch argues that the issue of whether the FDIC can file a timely proof of claim (by amending its previously filed proofs of claims) has been adversely decided by the Bankruptcy Court and that any attempt to re-litigate that issue is barred by claim preclusion. "Under a federal-law standard, the essential elements of claim preclusion are (1) a final judgment on the merits in the earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits." *Kale v. Combined Ins. Co. of Am.,* 924 F.2d 1161, 1165 (1st Cir.1991). The parties do not dispute the second and third prongs of *Kale.*[4] The parties disagree, however, whether the Bankruptcy Court's February 10th Order denying the motion to amend was a final judgment on the merits. The FDIC argues that the Bankruptcy Court's Order simply decided the narrow issue of whether its existing proofs of claims could be amended and not the larger issue of whether the FDIC might be able to resurrect its bankruptcy claims by some other means.

Branch argues that "a 'final judgment, order, or decree' entered in a bankruptcy case 'includes an order that conclusively determines a separable dispute over a creditor's claim or priority.'" *Giles World Mktg., Inc. v. Boekamp Mfg., Inc.,* 787 F.2d 746, 748 (1st Cir.1986), quoting *In re Saco Local Dev. Corp.,* 711 F.2d 441, 445–46 (1st Cir.1983). As such, "[f]inal orders of the Bankruptcy court are *res judicata* of all matters that were or could have been litigated before the Bankruptcy Court." *A. Musto Co. Inc. v. Satran,* 477 F.Supp. 1172, 1176 (D.Mass. 1979). See also *Jones v. Woody,* 139 B.R. 824, 827 (Bankr.S.D.Tex.1992) (same).

Branch also argues that the FDIC's failure to file a timely proof of claim bars any subsequent litigation of that claim because Bankruptcy Rule 3002 is in effect a statute of limitations.

Bankruptcy Rule 3002(c) governs the time within which proofs of claims must be filed in Chapter 7, Chapter 12, and Chapter 13 cases. The case law in this Circuit consistently regards the prescribed time period allowed for the filing of proofs of claims set forth in Rule 3002(c) as a statute of limitations barring late filing. *In re Nohle,* 93 B.R. 13, 15 (Bkrtcy.N.D.N.Y.1988) (citing cases). Accord, *Associated Container Transportation [Australia] Ltd. (In re Black & Geddes, Inc.),* 58 B.R. 547, 552–53 (S.D.N.Y.1983). "This ... filing requirement is a mandatory nondiscretionary statute of limitations, and may not, therefore, be extended by the courts once it has expired." *Lazar v. Sullivan (In re Sullivan),* 36 B.R. 771, 772 (Bkrtcy.E.D.N.Y. 1984). See *In re Alsted Automotive Warehouse, Inc.,* 16 B.R. 924 (Bkrtcy.E.D.N.Y. 1982).

*In re Roberts,* 98 B.R. 664, 665–666 (Bkrtcy. D.Vt.1989).

Similarly, the court in *In re Davis,* 936 F.2d 771, 773–774 (4th Cir.1991) held that:

[p]roofs of claim in bankruptcy are generally filed by creditors, who must file with the bankruptcy court in order to have their claims against the estate allowed.... By the operation of Bankruptcy Rule 9006(b)(3) on Rule 3002(c), creditors in a Chapter 7 proceeding who do not file a proof of claim within 90 days after the creditors' meeting are barred from filing such a claim, whether or not there was a good reason for the failure to timely file.... Failure of creditors to timely file proofs of claim results in their exclusion from the Trustee's Proposed Order of Distribution. Id. at 773–774.[5]

---

**4.** It is undisputed that the parties involved in both courts are identical. The FDIC admitted the identity of the causes of action by requesting permission of the Bankruptcy Court to amend its proofs of claims "to conform to the pleadings on file in the United States District Court, Eastern Division, in the Fraudulent Conveyance Litigation."

**5.** The holding in *Davis* is somewhat compromised by the decision of Congress in 1994 to amend 11 U.S.C. § 502(b) in response to the difficulty some courts, such as the one sitting *In re Hausladen,* 146 B.R. 557, 560 (Bankr.D.Minn. 1992) (en banc), were having reconciling Rule 3002(c) and 11 U.S.C. § 726(a) in Chapter 7 cases. See *In re Mid–Miami Diagnostics, L.L.P.,* 195 B.R. 20, 21–22 (Bankr.S.D.N.Y.). The above

Branch contends that the Bankruptcy Court's denial of the motion to amend the proofs of claims is the equivalent of a finding that the additional claims are barred by a statute of limitations, which in turn, is a final judgment on the merits triggering claim preclusion. Branch argues persuasively that *Johnson v. SCA Disposal Services of New England, Inc.*, 931 F.2d 970 (1st Cir.1991), is analogous and controlling. The facts of *Johnson* are as follows.

In August 1984, Grassy Knoll [the plaintiff] filed two state court actions against SCA (GKA I) .... Both diversity actions were removed to federal district court.... On October 9, 1986, Grassy Knoll moved to amend its complaint to include a $10,000,-000 claim for cleanup costs related to the EPA investigation.... This motion came on the eve of trial, more than two years after the suit's filing, over seven months after the EPA had first notified Grassy Knoll that it might be liable for various costs associated with cleanup of hazardous waste at the Auburn Road site, and well after the deadline for any such action had passed. On October 22, 1986, the trial court denied the motion to add the EPA cleanup count as untimely filed, and the case went to trial as scheduled on November 3, 1986. The jury returned a verdict in Grassy Knoll's favor and awarded damages, not including any amounts sought in the rejected proposed amendment. The court entered judgment accordingly on March 31, 1987. Neither party appealed any of the court's orders....

Nearly a year and a half later ... Grassy Knoll commenced in federal district court a second diversity action against SCA (GKA II). In effect attacking the district court's order disallowing the amendment in GKA I, Grassy Knoll claimed in its complaint that it was denied an opportunity to bring an action for cleanup costs resulting from the EPA's ongoing investigation in GKA I and therefore was doing so in GKA II.

Id. at 972–973.

The First Circuit held that res judicata applied:

GKA I determined liability *and* awarded damages, and a second suit for additional, but quite different, damages is thereby barred.... Under these circumstances, Grassy Knoll at the end of GKA I should have appealed the trial court's denial of Grassy Knoll's motion to amend. It is widely accepted that appeal is the plaintiff's only recourse in such a situation.... See 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4412, at 104–05 (1981) ("[F]or the most part such errors should be corrected by appeal in the first proceeding. Denial of leave to amend to assert all parts of a claim partially asserted at the outset of the first action ... should preclude a second action...."). In such an appeal, the unchallenged circumstance of a likely ruling of res judicata would have been a powerful factor in favor of reversal in view of F.R. Civ. P. Rule 15, which mandates that "leave [to amend] shall be freely given when justice so requires."

Id. at 975, 976, n. 19.

The FDIC argues that *Johnson* is distinguishable because it involved Fed.R.Civ.P. 15, and not the rules governing bankruptcy. The flaw in the FDIC's argument is that the Bankruptcy Rule governing amendments to a proof of loss, Rule 7015, expressly states that "Rule 15 Fed.R.Civ.P. applies in adversary proceedings."

The FDIC also argues that *Johnson* is inapplicable because GKA I was clearly decided on the merits, while the Bankruptcy Court denied the FDIC's motion to amend on purely procedural grounds. This, however, is a misinterpretation of *Johnson*. The *Johnson* opinion makes clear that Grassy Knoll was barred from bringing the unsuccessfully amended claims because they were asserted too late in the wrong court, and not because other of Grassy Knoll's claims were decided on the merits.

 The FDIC, however, does make one plausible challenge to the motion. The

---

quoted passage, however, is still valid as to late filed claims which are not governed by § 726(a),

or are not allowable under § 726(a).

FDIC argues that in a Chapter 7 case, 11 U.S.C. § 726(a) allows an untimely claim to sometimes survive the failure to file a proof of claim. Section 726(a) states that:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—. . .

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed . . .

(2) second, in payment of any allowed unsecured claim, . . . proof of which is—

 (A) timely filed, . . . or . . .

 (C) tardily filed under section 501(a) of this title, if—

 (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; . . .

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection.

Section 726(a), in other words, allows a creditor to file a tardy claim which if subsequently allowed entitles it to a distribution. Section § 726(a) divides tardy claims into two categories. Under § 726(a)(2)(C)(i), if a tardy creditor can show that he or she did not have notice of the bar date, then his or her claim is entitled to the same distributive share as other timely unsecured claims. Under § 726(a)(3), if the creditor had knowledge of the bar date but still filed late, then the claim is entitled to a distribution from any excess in the debtor's estate that remains after the first and second tiers are satisfied.

The FDIC argues that while the Bankruptcy Court's February 10th Order may have conclusively determined that it may not bring its counterclaims as timely claims, under § 726(a)(3) it still has the opportunity to re-file them as tardy claims. Thus, the Bankruptcy Court's Order did not completely dispose of the FDIC's counterclaims and is therefore not a final judgment on the merits.

■ Branch contends that this argument should have been made in an appeal of the Bankruptcy Court's original order, but that in any event, § 726(a)(3) only authorizes payment of an "allowed unsecured claim" and that the FDIC's claims have never been "allowed" or even "tardily filed."[6] Branch argues that if the FDIC wanted its claims to be considered in any possible third tier distribution, it should have filed them after the motion to amend its proofs of claims was denied. If they had been so filed, the Bankruptcy Court would have then decided whether or not they would have been allowed, and the decision (if adverse), could have been appealed.[7]

---

**6.** It is clear that tardy claims must be "allowed" by the Bankruptcy Court in compliance with 11 U.S.C. § 501 in order to qualify for distribution, as § 726(a)(3) specifically refers to "any *allowed* unsecured claim proof of which is tardily filed under section 501(a) of this title." (Emphasis added.) Section 501(a) simply states that "[a] creditor or an indenture trustee may file a proof of claim."

Section 502, however, provides that "[a] claim of interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects. . . . Except . . . if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . except to the extent that—" it falls within one of nine following exceptions. 11 U.S.C. § 502(a) and (b). The ninth exception, added by Congress in 1994, states that "proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title. . . ." 11 U.S.C. § 502(b)(9).

The parties dispute whether a Bankruptcy Court is compelled, in light of the wording of § 502(b)(9), to allow a tardy claim filed under § 726(a)(3). Ultimately, however, the issue of whether the FDIC's counterclaims should now be deemed "allowable" under § 726(a)(3) is not properly before this court because the Bankruptcy Court was never initially asked to consider or allow the FDIC's counterclaims under either § 726(a) or § 502(b). Consequently, this court will not attempt to substitute its judgment for that of the Bankruptcy Court, not only because the decision lies within the province of that Court, but also because this court would have no power to actually "allow" such a claim.

**7.** At oral argument, Branch maintained that if this had happened, the claims would have almost certainly been disallowed because the Bankruptcy Court has denied almost all other requests to file tardy claims and has already stated on the record that it sees no justifiable reason for the FDIC's delay. The FDIC argues that the information about the disallowance of other tardy claims is not properly before this court because it was not submitted in affidavit form. To settle

Whatever the merits of this last argument, the dispute need not be resolved. It is clear that the FDIC is barred from asserting its counterclaims as timely secured claims because the issue of whether the proofs of claims can be amended retroactively has been conclusively determined by the Bankruptcy Court. If the FDIC is correct, that the Bankruptcy Court's ruling is not a final judgment as to whether it can assert its counterclaims as tardy claims, the issue is besides the point because the FDIC has not filed for an allowance under § 726(a).

The FDIC concedes that "it must file a proof of claim in the BNEC Bankruptcy Case in order to have affirmative recovery against the BNEC bankruptcy estate or to obtain set-off against plaintiff if plaintiff recovers any amounts herein." FDIC's Opposition, at 17. See *Browner v. Rosen,* 56 B.R. 214, 216 (D.Mass.1985) ("[T]he sole remedy for asserting an affirmative right to monies owed by a bankrupt's estate, based on pre-petition debt, is to file proofs of claim.") This case was filed in 1991. It is set for trial in December. If the FDIC seeks to try the substance of the counterclaims, it must first obtain an "allowed" proof of claim under § 726(a). The FDIC's representation that it will file its proof of tardy claims at some undetermined time with the expectation that the Bankruptcy Court will allow them under § 726(a)(3) is meager gruel.[8] The FDIC in effect, proposes that the court spend days of what is already anticipated as being a lengthy trial resolving what at the moment is a purely hypothetical right to an improbable third tier distribution based on a claim which the Bankruptcy Court may never allow. That this situation exists is entirely of the FDIC's own making. See footnote 7, supra. This potential waste of time is not fair to the court, to the trustee, or to the FDIC's taxpayer clients. Consequently, Branch's motion to dismiss will be *ALLOWED,* without prejudice to the reinstitution of the counterclaims should the Bankruptcy Court allow the FDIC's tardy claims prior to November 2, 1998.

### *ORDER*

For the foregoing reasons, the Branch's motion for summary judgment on the counterclaims (# 475) is *ALLOWED* without prejudice.

SO ORDERED.

---

the matter, the court invited the FDIC to file its claims with the Bankruptcy Court under § 726(a) in order to obtain a determination whether the claims would be allowed or not. The FDIC responded that under § 726(a) it does not matter whether a claim is tardy by one day or one year and that for tactical reasons it is unwilling to proceed with a filing at this time.

**8.** Even if the operation of § 502(b)(9) means that the Bankruptcy Could cannot disallow the FDIC's counterclaims as untimely, it is undecided whether any of the other eight exceptions listed under § 502(b) might apply.