Diane ANDREWS–CLARKE, et al., Plaintiffs,

v.

LUCENT TECHNOLOGIES, INC., et al., Defendants.

No. CIV. A.01–10055–PBS.

United States District Court, D. Massachusetts.

July 27, 2001.

Richard J. Leonard, Reading, MA, for Plaintiffs.

Thomas E. Shirley, Choate, Hall & Stewart, Gregory C. Keating, Choate, Hall & Stewart, Boston, MA, Arthur N. Lerner, Crowell & Moring, David Florin, Beth M. Kramer, David Florin, Beth M. Kramer, Crowell & Moring LLP, Julie Barnes, Christopher Flynn, King, Pagano & Harrison, Washington, DC, Charles B. Straus, III, Mirick, O'Connell, DeMallie & Lougee, Joan O. Vorster, Mirick, O'Connell, De-Mallie & Lougee, LLP, Worcester, MA, for Defendants.

## ORDER

SARIS, District Judge.

After a review of the objections, I adopt the report and recommendation and order the action to be dismissed.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff Diane Andrews–Clarke brings this action individually, as Administratrix of the Estate of her deceased husband Richard J. Clarke, and as next friend of their minor children, seeking to recover damages for her husband's death which allegedly was the result of the defendants' refusal to authorize appropriate medical and psychiatric treatment during Mr. Clarke's repeated hospitalizations for alcoholism in 1994. The defendants are Lucent Technologies (formerly known as AT & T) ("AT & T"); Travelers Insurance Company (formerly known as MetraHealth Insurance and United HealthCare Insurance Company) ("Travelers") and TAO, Inc. (now known as Green Spring Health Services, Inc.) ("TAO").[1]

Each defendant has moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. (See Docket

---

1. For convenience, the defendants are referred to by their corporate names at the relevant time. The plaintiff previously moved to amend the complaint to add Magellan Health Services, Inc. ("Magellan") on the grounds that Magellan is the alter ego of TAO. (Docket No. 17). That motion was denied without prejudice as there was nothing in the record to indicate that Magellan was a successor to TAO. (Docket No. 33). The plaintiff moved for reconsideration on the grounds that Magellan is the majority shareholder of Green Spring, the successor to TAO. For the reasons detailed in a separate order, that motion is DENIED. Nevertheless, all rulings made on TAO's motion to dismiss would apply equally to Magellan if it were named a party.

Nos. 2, 6, 8). For the reasons detailed below, this court recommends to the district court judge to whom this case is assigned that the motions to dismiss be ALLOWED as this action is barred by the doctrine of res judicata, the claims raised are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001 *et seq.* ("ERISA"), and the plaintiff has not alleged any viable ERISA claims.

## II. *STATEMENT OF FACTS*

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts, and the plaintiff is to be given the benefit of all reasonable inferences. *See Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir.1999); *Dartmouth Review v. Dartmouth Coll.,* 889 F.2d 13, 16 (1st Cir. 1989). Applying this standard to the instant case, the relevant facts are as follows:

Diane Andrews–Clarke ("Andrews–Clarke") an employee of AT & T, maintained a health insurance policy with Travelers through her AT & T employee benefit plan. (*See* Complaint ("Compl.") at ¶¶ 12, 13 and Ex. C).[2] TAO, a utilization review company, contracted with AT & T to provide utilization review services for AT & T's employee health benefit plan.[3] (*Id.* at ¶¶ 11, 69). Andrews–Clarke's husband Richard Clarke ("Clarke"), and her children were named beneficiaries of the insurance policy. (*Id.* at ¶¶ 14, 15).

The allegations in the current complaint arise from the alleged failure of the defendants to authorize adequate medical and psychiatric treatment for Clarke prior to his suicide on November 12, 1994. (*See* Compl. Intro.) The plaintiff contends that Clarke was entitled to, and wrongfully denied, in-patient hospital care for detoxification and rehabilitation under the terms of AT & T's employee benefit plan, and that this failure to obtain the necessary treatment resulted in Clarke's tragic death. (*Id.* at ¶¶ 18, 29, 46, 58, 60–66; Ex. C).

### *Procedural Background*

The plaintiff filed her first suit in 1996 in state court against, *inter alia,* Travelers and TAO.[4] The defendants promptly removed the case to federal court, where they filed motions to dismiss on the grounds that the claims were preempted by ERISA. *See Andrews–Clarke v. Trav-*

---

**2.** Attached to the current complaint is a page from the 1993 AT & T Summary Plan Description for the AT & T Medical Expense Plan for Occupational Employees. (*See* Compl. Ex. C). AT & T has also submitted an entire copy of the Summary Plan Description which was in effect in 1994, which is the time period of the events forming the basis of the complaint. (*See* "Memorandum in Support of Lucent Technologies Inc.'s Motion to Dismiss," Docket No. 7, Ex. B., Tab A). The court considers this document without converting this action into a motion for summary judgment. *See Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 17 (1st Cir.1998) (when "complaint's factual allegations are expressly linked to—and admittedly dependant upon—a document ... that document effectively merges into the pleadings and the trial

court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

**3.** " 'Utilization review refers to an external evaluation of the appropriateness of a given course of treatment based upon established clinical criteria.' " *Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 2–3 n. 1 (1st Cir.1999) quoting *Andrews–Clarke v. Travelers Ins. Co.,* 984 F.Supp. 49, 50–51 n. 9 (D.Mass. 1997).

**4.** Three hospitals also were named as defendants. Two were dismissed for lack of personal jurisdiction. The claims against the third were referred to the Medical Malpractice Tribunal and were, therefore, no longer before the federal court at the time of the rulings discussed herein.

*elers Ins. Co.,* 984 F.Supp. 49 (D.Mass. 1997) (*"Andrews–Clarke I"*). In *Andrews–Clarke I,* like the instant case, the complaint alleged that Clarke's "death was the direct and foreseeable result of the improper refusal of Traveler's and its agent (TAO) to authorize appropriate medical and psychological treatment during Clarke's repeated hospitalization for alcoholism in 1994." *Id.* at 52. The factual allegations of the first complaint are virtually identical to the allegations of the present complaint.

After reviewing the factual allegations of the complaint in detail, the District Court (by Young, J.) allowed the motions to dismiss, but clearly was outraged by the ruling. In an eloquent and passionate decision, Judge Young wrote:

> This case, thus, becomes yet another illustration of the glaring need for Congress to amend ERISA to account for the changing realities of the modern health care system. Enacted to safeguard the interests of employees and their beneficiaries, ERISA has evolved into a shield of immunity that protects health insurers, utilization review providers, and other managed care entities from potential liability for the consequences of their wrongful denial of health benefits.

*Id.* at 53. Although clearly loathe to do so, by his decision dated October 30, 1997, Judge Young dismissed all the claims raised against Travelers and TAO in plaintiff's proposed second amended complaint after finding that the state law claims were either preempted by ERISA or did not confer a private right of action. *Id.* at 53–56. The court also determined that none of the plaintiff's claims stated a cause of action under ERISA. *Id.* at 55–56. The

counts against Travelers and TAO in the proposed second amended complaint included medical malpractice claims for negligent failure to diagnose and failure to administer appropriate treatment; wrongful death; breach of contract for failure to approve medically necessary treatment; loss of spousal and parental consortium; intentional infliction of emotional distress; negligent infliction of emotional distress; violations of Mass. Gen. Laws ch. 175, § 47B; violations of Mass. Gen. Laws ch. 176D, § 3; and violations of Mass. Gen. Laws ch. 93A. *Id.* at 53–56, n. 22, 23.

The plaintiff had attempted to add AT & T as a defendant in the proposed second amended complaint which formed the basis of Judge Young's ruling.[5] She subsequently sought leave to add AT & T in a third amended complaint pursuant to a motion filed in August, 1998, almost a year after Judge Young's decision dismissing the action. The motion to amend was denied, and the plaintiff then moved for reconsideration of that denial. In an Order dated February 9, 1999 the Court (by Saris, J.) found that either the motion to add AT & T had already been denied, or if it had been allowed (as plaintiff claimed it had been), the plaintiff had failed to serve the complaint on AT & T in a timely manner. Thus, the motion for reconsideration was denied. (*See* Civil Action No. 97–10191–WGY/PBS Docket # 77).

### The Present Complaint

The plaintiff never appealed from any of the decisions rendered in the District Court. Rather, on November 8, 2000, she filed the instant case in state court against Travelers, TAO and AT & T. The defendants removed the case from state court to this court on January 11, 2001. The factu-

---

5. While in his October 30, 1997 decision Judge Young stated that at a hearing he "did not grant the Plaintiff leave to add AT & T as

a defendant," 984 F.Supp. at 50, n. 4, the docket sheet indicated that the motion to amend to add AT & T had been allowed.

al allegations of the instant case mirror those of *Andrews–Clarke I.* In addition, the plaintiff has realleged many of the same legal claims, this time adding AT & T as one of the defendants.[6] Liberally reviewing the complaint to identify "new" causes of action (although they are all based on the same operative facts), it can be found that the complaint adds a count against AT & T for breach of contract based on the alleged failure to provide the contracted for and medically necessary inpatient program (Count I); a count against the defendants for tortious interference with Andrews–Clarke's contract with her employer to provide health benefits and contracts with Clarke's physicians and other health care providers (Count II); a count alleging that the defendants breached their own fiduciary duties, and were vicariously liable for the others breach of the fiduciary duties they owed the plan beneficiaries, by refusing to provide medical treatment and a written explanation or justification for the denial of treatment (Count III); a count under Mass. Gen. L. ch. 176G entitled "Bad Faith" wherein plaintiff alleges the defendants are liable under Mass. Gen. L. ch. 176D, § 3(9) and ch. 175, § 47B for unfair insurance claim settlement practices (Count V); a count under Mass. Gen. Laws ch. 176G, § 8 entitled "Fraud" alleging public dissemination of deceptive or misleading materials (Count VI); and a count entitled "Substandard Quality of Care" (Count VIII). Finally, the complaint seeks actual, compensatory, and punitive damages, treble damages under Mass. Gen. Laws ch. 93 and Mass. Gen. Laws ch. 176G, and "statutory damages in the amount of $100 per day per failure to give written notice of claims denied as accrued since April 22, 1994."

### *The Motions to Dismiss*

The defendants' motions present four basic arguments. First, the defendants contend that the plaintiff's claims are barred by the doctrine of res judicata. Second, the defendants contend that the plaintiff's claims are preempted by ERISA. Third, the defendants argue that the plaintiff has failed to allege any viable causes of action under ERISA. Finally, according to the defendants, the plaintiff's claims are time-barred. For the reasons detailed below, for the first three of these reasons I recommend that the motions to dismiss be allowed. Factual disputes, however, preclude the dismissal of this case on statute of limitations grounds.

### III. *DISCUSSION*

#### A. *Standard of Review*

Each defendant has moved to dismiss all counts of the complaint under Fed.R.Civ.P. 12(b)(6) for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss the court accepts as true all well-pleaded factual averments and draws all reasonable inferences in the plaintiff's favor. *See Dartmouth Review,* 889 F.2d at 16 (1st Cir. 1989). "Dismissal under Fed.R.Civ.P. 12(b)(6) is only appropriate, if the complaint, so viewed, presents no set of facts justifying recovery." *Cooperman,* 171 F.3d at 46 (1st Cir.1999); *Conley v. Gibson,* 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957).

---

**6.** These claims include wrongful death (Count XI), loss of spousal and parental consortium (Counts XII and XIII), intentional and negligent infliction of emotional distress (Counts IX and X), and violations of Mass. Gen. Laws ch. 175, § 47B (Count IV) and ch. 93A (Count VII).

## B. *Res Judicata*

■ "The policy behind res judicata is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.,* 181 F.3d 174, 181 (1st Cir.1999) (internal quotations omitted). Due to the striking similarities between the current complaint and the proposed second amended complaint dismissed by Judge Young, this court begins its analysis with a determination of whether the plaintiff's current claims are barred by res judicata. For the reasons detailed below, I find that the claims are so barred.

■ The res judicata analysis is governed by federal law since the original action was litigated in this court. *See In re Iannochino,* 242 F.3d 36, 41 (1st Cir. 2001) ("Federal res judicata principles govern the res judicata effect of a judgment entered in a prior federal suit ....") and cases cited; *Havercombe v. Dept. of Educ. of the Comm. of P.R.,* 250 F.3d 1, 3 n. 4 (1st Cir.2001); *see also Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751, 755 (1st Cir.1994) ("Federal law governs the res judicata effects of a federal court judgment in a federal question case as applied to a later case that again presents a federal question to a federal court") and cases cited. "Under federal law, the doctrine of *res judicata* dictates that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Perez v. Volvo Car Corp.,* 247 F.3d 303, 311 (1st Cir.2001) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)); *see also Kale v. Combined Ins. Co. of America,* 924 F.2d 1161, 1164 (1st Cir.1991), *cert. denied,* 502 U.S. 816, 112 S.Ct. 69, 116 L.Ed.2d 44 (1991) ("Once there has been an adjudica-

tion on the merits, federal law stipulates that all claims which are part of the same cause of action are extinguished, whether or not asserted in the original action") (internal quotations and citations omitted). The doctrine of res judicata applies when there is "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *Iannochino,* 242 F.3d at 43 (quoting *Mass. Sch. of Law, Inc. v. American Bar Ass'n,* 142 F.3d 26, 37 (1st Cir. 1998)); *see also Havercombe,* 250 F.3d at 3. The case presented satisfies all of these elements.

### Final Judgment On The Merits

■ The plaintiff contends that there was no "final judgment on the merits" because the "merits" were never reached, the complaint was dismissed on "procedural grounds" due to ERISA preemption, and, since the judgment did not specify one way or the other, the dismissal was without prejudice. The law, however, is clear that the dismissal for failure to state a claim does constitute a final judgment for res judicata purposes. Thus,

> A dismissal for failure to state a claim is a judgment on the merits, unlike dismissals for lack of subject matter or personal jurisdiction, improper venue, or failure to join the proper parties under Rule 19. This type of dismissal, presumed to be with prejudice unless the order explicitly states otherwise, has a claim preclusive effect.

2 James Wm. Moore, *Moore's Federal Practice,* § 12.34[6][a] (3rd Ed.1997). *See also Isaac v. Schwartz,* 706 F.2d 15, 17 (1st Cir.1983) ("under Massachusetts law, as elsewhere, dismissal for failure to state a claim ... operates as a dismissal on the merits with res judicata effect") and cases

cited; *Connaughton v. New England Telephone and Telegraph*, No. 87–2369–MA, 1988 WL 34321, at *3 (D.Mass. March 18, 1988) ("A dismissal on a 12(b)(6) motion for failure to state a claim, is 'on the merits' for purposes of *res judicata* ").

■ Moreover, regardless whether the dismissal was with or without prejudice, the issue is whether the "court in the first action has expressly reserved the plaintiff's right to maintain the second action." *Kale*, 924 F.2d at 1167 (holding dismissal without prejudice did not preclude the application of the doctrine of res judicata), quoting Restatement (Second) of Judgments § 26(1)(b) (1982). In the present case it is abundantly clear from his decision that Judge Young did not see any way for the plaintiff to proceed with her claims, regardless of the harshness of that result. Thus, not only did the decision analyze the broad preemptive effect ERISA has over all of the plaintiffs common law and statutory claims, it also included a thorough analysis of the allegations of the complaint before concluding that no viable claim could be made under ERISA. *See, e.g., Andrews–Clarke*, 984 F.Supp. at 55, n. 26. There is no indication that the court was granting the plaintiff the right to bring a second action, and there was a final decision on the merits to satisfy the first element of a res judicata analysis.

### Identity of the Parties

There is no dispute that Travelers and TAO were parties in the earlier action and meet the identity of the parties criteria. *See Andrews–Clarke*, 984 F.Supp. at 53, n. 20. It is less clear whether AT & T was actually named as a party.[7] In any event, AT & T was referred to in the plaintiff's original and subsequent complaints, although identified initially as a "non-party," and the same claims eventually asserted against AT & T were asserted against TAO and Travelers from the outset. (*See, e.g.*, original Compl. dated 11/12/96 at ¶¶ 14) (AT & T listed as "non-party"), 16 (plaintiff maintained health insurance through her employer AT & T), 157 (refusal to authorize 30 day in-patient treatment which is a defined benefit of the AT & T Employee Benefit Program); Am. Compl. dated 12/10/96 at ¶¶ 14, 16, 169 (same, with ¶ 157 being renumbered 169), proposed Second Am. Compl. dated 3/3/97 at ¶¶ 14 (AT & T now identified as a party), 16 (same), 216 et seq. (adding counts against AT & T for wrongful death, breach of contract, loss of consortium, and intentional and negligent infliction of emotional distress which are substantively identical to those asserted against TAO and Travelers). Under the facts of this case, the doctrine of res judicata should preclude the instant action against AT & T even if it were not a party to the *Andrews–Clarke I.*

■ It has long been recognized that the federal doctrine of "non-mutual claim preclusion" permits a non-party defendant in a prior action to raise a defense of res judicata in a subsequent suit. *See In re El San Juan Hotel Corp.*, 841 F.2d 6, 10 (1st Cir.1988) ("In the jargon of res judicata and collateral estoppel law, the question is whether a form of 'nonmutual claim preclusion' is appropriate, i.e. whether a party not involved in the earlier action may deflect this lawsuit because he should have been, but was not, included in the earlier suit").[8] Thus, non-defendants in one ac-

---

**7.** In connection with her motion to reconsider the denial of her request for leave to file a third amended complaint, plaintiff argued that Judge Young had allowed her previous motion to add AT & T as a defendant. Judge Saris ruled that if that were the case, plaintiff had failed to serve AT & T in a timely manner. *See supra.*

**8.** "What makes this 'nonmutual' is that the plaintiff ... could not rely on the earlier

tion may assert res judicata in the second action "if the new defendants have a close and significant relationship with the original defendants, such as when the new defendants were named as conspirators in the first proceeding but were not joined in the action." *Id.* at 10, and cases cited. "Another formulation of this idea is that preclusion is appropriate 'only if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance.'" *Id.* (quoting 18 Wright & Miller § 4464 at 589).

In the present case, AT & T was named, albeit as a "non-party" in the initial complaint, and the proposed second amended complaint raised basically the same claims against AT & T that the plaintiff is seeking to assert now. AT & T's liability (if any), is dependent upon a finding of wrongdoing by TAO and/or Travelers. (*See, e.g.,* Compl. at ¶¶ 74, 88 (AT & T liable for failure to supervise other defendants); ¶ 104 (under doctrine of respondeat superior, AT & T vicariously liable for wrongful conduct of TAO and Travelers)). It has been known from the outset that the employee benefit plan in question was issued to employees of AT & T, that the plaintiff was an employee of that company, and that the alleged failure to provide the benefits authorized by the plan formed a key part of the plaintiff's claim. Clearly AT & T could have been named as a defendant in the first suit (assuming, arguendo, that it was not). Under such circumstances, AT & T has a sufficiently "close and significant relationship with the original defen-

dants" to warrant the application of the doctrine of res judicata. *See, e.g., In re El San Juan,* 841 F.2d at 11 (new defendant can assert res judicata where the new defendant and the original defendant were alleged to be "co-perpetrators" in causing "joint harms" to the plaintiff); *Burns v. Town of Lamoine,* 2000 WL 1612704, at *3 (D.Me. Sept. 21, 2000) (because plaintiff claimed that new defendant and original defendant acted as co-conspirators, court found sufficient identity between the parties for purposes of claim preclusion.); *Connaughton,* 1988 WL 34321, at *4 and cases cited (unnamed individual employees can rely on res judicata to prevent second suit—no injustice against the plaintiff since they could and should have been named in the first suit); *Miller Hydro Group v. Popovitch,* 851 F.Supp. 7, 11 (D.Me.1994) and cases cited (inappropriate to permit "repeated litigation of the same issue as long as the supply of unrelated defendants holds out . . . .") (citation omitted).

Moreover, the claims against AT & T do not raise issues under ERISA and the preemption doctrine distinct from those raised against TAO and Travelers.[9] Thus, the legal analysis undertaken by Judge Young applies equally to AT & T, and the plaintiff had a full and fair opportunity to present her arguments on these issues. Since the plaintiff had a full and fair opportunity to have brought her action against AT & T in the prior proceedings, there is no basis for letting her proceed against AT & T in this new case. *In re El San Juan Hotel Corp.,* 841 F.2d at 10 n. 8; *Mass. Sch. of Law,* 142 F.3d at 39.[10]

---

action as an estoppel *against* [the new defendant]." *In re El San Juan,* 841 F.2d at 10, n. 7, citations omitted.

**9.** Even in the present case, plaintiff does not argue that the ERISA and preemption issues differ among the defendants. The only time AT & T is treated separately in the plaintiff's

briefs is in connection with the "identity of parties" element of res judicata.

**10.** Although cited by the defendants, the doctrine of privity does not preclude this second suit against AT & T. "Nonparties may gain the benefit of a prior litigation if they were in

*Identity Of The Causes Of Action*

The plaintiff contends that the claims contained in the current complaint differ from the prior action. For example, the plaintiff contends that she has abandoned claims under Mass. Gen. Laws ch. 176D and now relies on Mass. Gen. Laws ch. 176G. Plaintiff allegedly has also added "new" claims under the common law of contracts and fiduciaries, the doctrine of respondeat superior, substandard quality of care, and failure to notify insurance beneficiaries of denial of claims. (*See* Compl. at "Procedural History").

 Federal courts apply a transactional approach when "determining whether 'causes of action are sufficiently related to support a res judicata defense.' " *Iannochino*, 242 F.3d at 46 (citation omitted). " 'Under this approach a cause of action is defined as a set of facts which can be characterized as a single transaction or series of related transactions.' " *Mass. Sch. of Law*, 142 F.3d at 38 (citation omitted). As the First Circuit recently reiterated:

> "[a] single cause of action can manifest itself in an outpouring of different claims, based variously on federal statutes, state statutes, and the common law .... [A]s long as the new complaint grows out of the same transaction or series of connected transactions as the old complaint, the causes of action are considered to be identical for res judicata purposes."

*Havercombe*, 250 F.3d at 4 (quoting *Kale*, 924 F.2d at 1166) (quotation marks and citations omitted). "This boils down to whether the causes of action arise out of a common nucleus of operative facts .... In mounting this inquiry, we routinely ask 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.' " *Mass. Sch. of Law*, 142 F.3d at 38 (citations omitted). "[I]t necessarily follows that a particular legal theory not pressed in the original suit will nonetheless be precluded in the subsequent one if it prescinds from the same set of operative facts .... In this way, the law prevents a litigant from claim-splitting, requiring that he 'assert all his various legal theories and factually related allegations the first time he brings suit.' " *Kale*, 924 F.2d at 1166 (citation omitted).

Many of the claims asserted in the complaint are identical to the claims from the previous action leaving little doubt that "identity of the causes of action" exists. *See* note 6, *supra*. The remainder of the claims have either changed slightly or contain legal theories not previously asserted. For example, the claims for breach of contract and substandard care differ slightly from the allegations of the previous case, but are, on the whole, retreaded material. Although some of the claims in the current action are "cloaked" with different theories of liability and some new selections of remedy, the fundamental cause of action remains the same; the defendant's failure to approve medical and psychological treatment for Clarke's repeated hospitalizations during 1994. No new facts or series of events have been added to the mixture. As a result, there is an identity of cause of action as defined by federal res judicata

privity with a party to the previous action." *Iannochino*, 242 F.3d at 45–46 citing cases. Privity may exist "if a nonparty either substantially controlled a party's involvement in the initial litigation or, conversely, permitted a party to the initial litigation to function as his de facto representative." *Id.* at 46, citation omitted. However, there is nothing in the record to indicate that AT & T had substantial control over any party's involvement in the previous action.

principles. *See Kale*, 924 F.2d at 1161; *Havercombe*, 250 F.3d at 3–4 (because new legal theory in second action could have been brought in first action, claim barred by res judicata); *Simmons v. Anzon, Inc.*, No. 94–0467, 1994 WL 317853 (E.D.Pa. June 21, 1994) (dismissing ERISA action as barred by res judicata since plaintiff's earlier state law claims which were dismissed on ERISA preemption grounds alleged the same wrong).[11] Since all the elements of res judicata have been satisfied, this court recommends that the defendants' motions to dismiss be allowed.

### C. *ERISA Preemption*

Even if the plaintiff's claims are not barred by the doctrine of res judicata, these claims would nevertheless be preempted by ERISA. For this additional reason, the motions to dismiss should be allowed.

Section 514(a) of ERISA contains a broad preemption provision which provides that it supercedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). "ERISA preemption analysis thus involves two central questions: (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." *McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 36 (1st Cir. 1998) and cases cited. Both of these questions should be answered in the affirmative in the present case.

#### Employee Benefit Plan

ERISA defines an "employee welfare benefit plan" as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds or prepaid legal services . . . .

29 U.S.C. § 1002(1). In the present case, it is undisputed that AT & T provided health insurance to its employees, including the plaintiff, through an insurance policy issued by Travelers. Plaintiff cannot and does not dispute that the plan which forms the basis of the complaint is an "employee welfare benefit plan" under ERISA. (*See* Pl. Mem. in Opp'n to Mot. to Dismiss at ¶¶ 12–17, 53–62; *see also* Compl. Ex. C and Mem. in Supp. of Lucent Technology's Mot. to Dismiss, Ex. B, Tab A).

#### *"Related To"*

 The more difficult question under the ERISA preemption analysis is whether the plaintiff's state law claims "relate to" the employee benefit plan. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (quotation omitted); *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 1327, 149 L.Ed.2d 264 (2001).

---

**11.** Moreover, the allegations of the dismissed complaint and the instant complaint "are related in time, space, origin," and if the original case and this case were tried they would involve the same witnesses. It, therefore, would conform to the parties' expectations that the cases be combined. Under such circumstances, it is undisputable that the two actions arise out of "a common nucleus of operative facts." *See Aunyx Corp. v. Canon USA, Inc.*, 978 F.2d 3, 6–7 (1st Cir.1992).

There are two tests for determining whether an action brought under state law "relates to" an ERISA plan. *See Ingersoll–Rand,* 498 U.S. at 140–42, 111 S.Ct. at 483–84; *Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1st Cir.1994). First, "a state law cause of action is expressly preempted by ERISA where a plaintiff, in order to prevail, must prove the existence of, or specific terms of, an ERISA plan." *McMahon,* 162 F.3d at 38. *See also Vartanian,* 14 F.3d at 700 ("The cause of action 'relates to' an ERISA plan in this context because the court's inquiry must be directed to the plan."). Second, even if there were no express preemption, a state cause of action would be preempted if "it conflicts with an ERISA cause of action." *Ingersoll–Rand,* 498 U.S. at 142, 111 S.Ct. at 484; *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556–57, 95 L.Ed.2d 39 (1987) ("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive."). The present case satisfies both tests.

■ Regardless of how the claims are characterized, plaintiff's fundamental argument is that Clarke did not receive the medical treatment to which he was entitled under the plan. It is well-established that state law claims based on the improper processing of a claim for benefits are preempted by ERISA since the existence and terms of the plan are critical to the plaintiff's claims. *See, e.g., Pilot Life,* 481 U.S. at 48, 107 S.Ct. at 1553 ("The common law causes of action raised in [plaintiff's] complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a)."); *Hampers v. W.R. Grace &*

*Co.,* 202 F.3d 44, 51 (1st Cir.2000) (ERISA preempts "a state's attempt to provide state remedies for what is in essence a plan administrators refusal to pay allegedly promised benefits") (citation omitted); *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1331–34 (5th Cir.1992) (state law claim for wrongful death against utilization review provider for refusal to pay for necessary medical treatment preempted under ERISA). Moreover, preemption occurs regardless of the common or state law causes of action asserted. *See, e.g., Williams v. HealthAlliance Hosp.,* 135 F.Supp.2d. 106, 110 (D.Mass.2001) (breach of contract claim preempted since plaintiff needs to prove existence of employee benefit plan governed by ERISA to support wrongful withholding of benefits claim); *Pilot Life,* 481 U.S. at 48, 107 S.Ct. at 1553 (common law claims for tortious breach of contract and breach of fiduciary claims based on alleged improper processing of a claim for benefits under an employee benefit plan were preempted); *see also McMahon,* 162 F.3d at 38–39. In short, all of plaintiff's statutory and common law claims must fail because they are premised on and dependent upon the existence of the ERISA-controlled plan and the benefits provided thereunder. *See, e.g., Harris v. Harvard Pilgrim Health Care,* 208 F.3d 274, 281 (1st Cir.2000) (ch. 93A claim preempted where trier of fact would have to consult ERISA plan to resolve plaintiff's claim); *Tuohig v. Principal Ins. Group,* 134 F.Supp.2d 148, 153–54 (D.Mass.2001) (where ch. 93A claim "is closely related to the denial of benefits under the plan," it is preempted under ERISA; emotional distress claims similarly preempted); *Pollini v. Raytheon Disability Employee Trust,* 54 F.Supp.2d 54, 60 (D.Mass.1999) (preemption of loss of consortium claim based on alleged wrongful denial of benefits under employee benefit plan).

As noted above, plaintiff's claims must be deemed preempted for the additional reason that the ERISA statute provides an exclusive remedy for wrongful denial of benefit claims, and parties cannot maintain actions distinct from those provided by the ERISA statute. The detailed provisions of ERISA's Section 502(a) allow a plan participant or beneficiary to bring a civil suit to recover benefits due under the terms of a plan, to enforce rights under the terms of the plan, or to obtain a declaration of the rights of a beneficiary to future benefits. *See* 29 U.S.C. § 1132(a)(1)(B); *Vartanian*, 14 F.3d at 700–01; *Hampers*, 202 F.3d at 50. This provision, § 502(a), is the exclusive remedy for rights guaranteed under ERISA. *See Ingersoll–Rand*, 498 U.S. at 144, 111 S.Ct. at 485. As a result, state law claims which fall within ERISA's civil enforcement regime will be preempted. *See Turner v. Fallon Community Health Plan*, 127 F.3d 196, 198–99 (1st Cir.1997) (finding that plaintiff's state law claims that a beneficiary of a plan "has been denied 'the rights and benefits due under the policy' or has suffered a breach of fiduciary duty in the withholding of those benefits" were preempted since ERISA provides its own remedy to secure benefits and does not provide for compensatory or punitive damages) (citation omitted).

The case law, again, is consistent and mandates the dismissal of the present case. Cases raising claims similar to those presently before the court repeatedly are found to be preempted by ERISA. *See, e.g., Williams*, 135 F.Supp.2d at 111 (because plaintiff's state law claims seek to enforce "via alternative routes, his rights under an employee benefit plan," his claims were barred by civil enforcement section of Section 502(a)); *Hampers*, 202 F.3d at 53–54 (same); *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4–6 (1st Cir.1999) (plaintiff's state law tort claims against utilization review company alleging improper processing of claim benefits under ERISA plan preempted since all state-law-based attacks on this conduct would amount to "alternative enforcement mechanism" to Section 502(a)).

### Regulation of Insurance

■ Plaintiff has sought to avoid dismissal by arguing that she has asserted claims relating to the regulation of insurance which are excluded from the preemption by virtue of the "savings clause" of ERISA. *See* 29 U.S.C. § 1114(b)(2)(A) (ERISA's savings clause which states, "nothing in [ERISA] shall be construed to exempt or relieve any person from any law of any state which regulates insurance ...."). In the present case, either plaintiff does not rely on statutes which regulate insurance, or bases her claims on statutes which do not provide a private cause of action. Therefore, this argument does not save the complaint from dismissal on grounds of preemption.

■ In order to determine whether a law "regulates insurance" and avoids ERISA preemption, this court is guided by a two tier analysis. First, this court must take a "common sense view" of the language of the savings clause to see if the state law in question regulates insurance. Second, the court should consider the three criteria used to define the "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq.; (1) whether the state law has the effect of transferring or spreading a policyholder's risk; (2) whether the state law is an integral part of the policy relationship between the insurer and insured; (3) whether the state law is limited to entities within the insurance industry. *See Ryan v. Fallon Comm. Health Plan*, 921 F.Supp. 34, 37 (D.Mass.1996) (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724,

740–43, 105 S.Ct. 2380, 2389–91, 85 L.Ed.2d 728 (1985)). Again, despite the plaintiff's protestations to the contrary, actions asserting bad faith in handling claims are not deemed to be directed to the regulation of insurance, and are preempted. *See Pilot Life,* 481 U.S. at 49–51, 107 S.Ct. at 1554–55. Consequently, the complaint should be dismissed.

To the extent that the plaintiff relies on statutes which are directed toward the regulation of insurance, those statutes do not create a private cause of action.[12] For example, plaintiff claims the defendants violated Mass. Gen. Laws ch. 175, § 47B which specifies mandatory maximum mental health care coverage under certain insurance policies, including employee health benefit plans. This statute does regulate "the terms of certain contracts" and is saved from preemption to the extent that the Attorney General seeks to enforce its provisions. *See Metro. Life,* 471 U.S. at 738–47, 105 S.Ct. at 2388–93. However, there is no private right of action for individuals seeking to enforce the statute's provisions. *See Andrews–Clarke I,* 984 F.Supp. at 53–54, n. 22.

Similarly, plaintiff's citation in Count V of her complaint to Mass. Gen. Laws ch. 176G, entitled "Bad Faith," and to ch. 176G, § 8 in Count VI[13] does not save this case from ERISA preemption. As an initial matter, ch. 176G applies only to HMOs and the plaintiff does not and cannot allege that the defendants are HMOs and therefore subject to ch. 176G. *See* Pl.'s Mem. in Opp'n to Mot. to Dismiss at

¶ 53 (plaintiff admits that "defendants TAO/Green Spring and Travelers Insurance are not individually or collectively an HMO"); *Ryan,* 921 F.Supp. at 38 (since ch. 176G only relates to HMOs, the sections of the chapter "do not sufficiently affect the substantive terms of insurance contracts" to be saved from preemption). Moreover, within these counts, plaintiff complains that the defendants engaged in unfair insurance claim settlement practices under Mass. Gen. Laws ch. 176D, § 3(9). Again, however, ch. 176D does not fall within ERISA's savings clause since it does not "sufficiently affect the substantive terms of insurance contracts . . . ." *Ryan,* 921 F.Supp. at 38.[14] In short, the "savings clause" of ERISA does not save plaintiff's claims for preemption and the motions to dismiss should be allowed.

### D. *Plaintiff Has Not Asserted A Claim Under ERISA*

The fact that ERISA completely preempts a plaintiff's claims does not always entitle the defendant to dismissal because there is the possibility that the plaintiff's complaint may state a valid ERISA claim. *See Fitzgerald v. Codex Corp.,* 882 F.2d 586, 589 (1st Cir.1989) (the fact that most of the plaintiff's state law claims were preempted by ERISA does not necessarily compel dismissal under Fed.R.Civ.P. 12(b)(6)); *accord Williams,* 135 F.Supp.2d at 111. However, in the present case, the plaintiff has not asserted any viable claims under ERISA.

Under ERISA's civil enforcement scheme, a civil action may be brought by a

---

**12.** Statutes concerning the regulation of insurance in Massachusetts are found in chapters 174A–178 of the Massachusetts General Laws.

**13.** Mass. Gen. Laws ch. 176G, § 8 addresses the public dissemination of false and misleading material by an HMO.

**14.** Plaintiff also asserts that the defendants' failure to provide the coverage required by ch. 175, § 47B constitutes an unfair practice under ch. 176D. However, as detailed above, ch. 175, § 47B does not create a private cause of action, and "no private right of action generally exists under Chapter 176D standing alone." *Ryan,* 921 F.Supp. at 38.

plan participant to recover benefits due under the terms of the plan, to enforce rights under the plan, or to clarify rights to future benefits under the plan. *See* 29 U.S.C. § 1132(a)(1)(B); 502(a). These actions are the "exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper precessing of a claim for benefits . . . ." *Pilot Life,* 481 U.S. at 52, 107 S.Ct. at 1555. Moreover, relief under § 502(a) "may take the form of accrued benefits due, a declaratory judgment or entitlement to benefits or an injunction against a plan administrator's improper refusal to pay benefits." *Id.* at 53, 107 S.Ct. at 1556. In certain circumstances, the removal of a fiduciary may also be an appropriate remedy. *Id.* However, ERISA "does not create compensatory or punitive damage remedies where an administrator of a plan fails to provide the benefits due under that plan." *Hampers,* 202 F.3d at 51 (quotations omitted).

In the present case, plaintiff's complaint is not seeking to secure rights under the plan, rather she is seeking damages for breach of the plan. Under such circumstances, she has failed to state a claim under ERISA. *See Turner,* 127 F.3d at 198–199 and cases cited.

The plaintiff amended the Demand for Relief in her complaint to include "statutory damages in the amount of $100 per day per failure to give written notice of claims denied as accrued since April 22, 1994." The complaint also alleges that the plaintiff "has never received written denial of the decedent's claim or rationale for said denial." (*See* Compl. at ¶ 117; *see also* ¶ 100). This request for damages was likely made pursuant to ERISA § 502(c)(1)(B) which provides:

> Any Administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal . . . .

29 U.S.C. § 1132(c)(1). However, the plaintiff has not stated a claim under this ERISA provision. The relevant Code of Federal Regulations provides that "a claim for benefits is a request for plan benefits or benefits made by a claimant in accordance a plan's reasonable procedure for filing benefit claims." *See* 29 C.F.R. § 2560.503–1(e). According to the AT & T plan, when making a claim for benefits, a plan participant or beneficiary must file a *written* claim. *See* Lucent Mem. in Supp. of Mot. to Dismiss, Ex. B, Tab A at 85 (emphasis in the original). The claims administrator is only obligated to provide written notice of the claim administrator's decision and the specific reason for the decision after the written claim is made. *Id.* The complaint is devoid of allegations that the plaintiff made a written claim for benefits or information from the plan administrator. As such, the plaintiff would not be entitled to relief under 29 U.S.C. § 1132(c)(1).

### E. *Statute of Limitations*

Finally, the defendants assert that all of the plaintiff's claims are barred by a three year statute of limitations applicable to the plaintiff's tort and related contract claims and a four year limitations period for the Massachusetts statutory claims. The defendants contend that at the very latest, the claims accrued on November 12, 1994, the date Clarke died, allegedly as a result of the defendants' actions. The present suit was filed on November 8, 2000, just

short of six years from the date of Clarke's death.

The plaintiff contends that her contract and breach of fiduciary claims fall under a six year statute of limitations period and also seeks equitable tolling of all limitations periods due to the mental incapacity of Andrews–Clarke.

Because this court recommends dismissal on the basis of res judicata and ERISA preemption, a lengthy analysis of the statute of limitations argument is not necessary. However, due to the extensive briefing of the matter by parties I feel compelled to comment on the issues raised.

It is undisputed that the plaintiff's claims of tortious interference with contract, intentional and negligent infliction of emotional distress, and loss of consortium are subject to the three year limitations period provided under Mass. Gen. Laws ch. 260, § 2A.[15] Likewise, the plaintiff's wrongful death claim is governed by its own three year statute of limitations. See Mass. Gen. Laws ch. 229, § 2. Morever, the plaintiff's state statutory claims are in the nature of consumer protection actions, which under Massachusetts law must be commenced within four years after the cause of action accrues. See Mass Gen. Laws ch. 260, § 5A (governing "[a]ctions arising on account of violations of any law intended for the protection of consumers, including by not limited to ... chapter ninety-three A; ... chapter one hundred and seventy-six D"). Clarke's death is logically the outside date on which these claims might have accrued. Thus, it appears that they would be time-barred unless the statute of limitations is tolled.

The plaintiff has also asserted common law breach of contract and breach of fiduciary duty claims.[16] The defendants contend that the applicable limitations period for these claims is three years while the plaintiff relies on the six year statute of limitations period provided under Mass. Gen. Laws ch. 260, § 2.[17] Both sides can find case law to support their claim. Thus, in *Pagliuca v. City of Boston*, the court held that although "[c]laims for breach of contract are ordinarily subject to a more generous six year statute of limitations,

---

**15.** Mass. Gen. Laws ch. 260, § 2A provides: "Except as otherwise provided, actions of tort, *actions of contract to recover for personal injuries* and actions of replevin, shall be commenced only within three years next after the cause of action accrues." (emphasis added).

**16.** Assuming, *arguendo*, that the complaint raises a claim for breach of fiduciary duty under ERISA, the Act provides its own limitations period for such a claim. See 29 U.S.C. § 1113. Under this statutory provision, a plaintiff must bring an action within six years after the date of the last action which constituted a breach or violation, or in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation. See 29 U.S.C. § 1113(1)(A) and (B). However, if the plaintiff has actual knowledge of the breach or violation, the action must commence within three years. See 29 U.S.C. § 1113(2). In this case's present posture, this court does not need to determine which, if any, limitations period would apply in this case. See *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F.Supp.2d 79, 86–87 (D.Mass. 1998) (in suit to recover plan benefits under 29 U.S.C. § 1132, cause of action accrued when plaintiff knew of critical facts that claim denied even though plan administrator failed to issue proper notice of denial of benefits); *but see Kodes v. Warren Corp.*, 24 F.Supp.2d 93, 102–03 (D.Mass.1998) (limitation period on wrongful denial of benefits claim did not begin to run because plaintiff did not receive adequate written notice of the denial of benefits).

**17.** Mass. Gen. Laws ch. 260, § 2 provides: "Actions of contract, *other than those to recover for personal injuries* founded upon contracts or liabilities, express or implied ..., shall excepted as otherwise provided, be commenced only within six years next after the cause of action accrues." (emphasis added).

G.L. c. 260 ... when the gravamen of the complaint is that the defendant has caused the plaintiff a personal injury, the shorter three year period applies." 35 Mass.App. Ct. 820, 823, 626 N.E.2d 625, 628 (1994). Because the alleged loss suffered by the plaintiff in relation to her breach of contract claim resulted in emotional distress and loss of reputation, the court in *Pagliuca*, found that these were personal injuries within the meaning of Mass. Gen. Laws. ch. 260, § 2A and applied a three year statute of limitations period. *See id.* at 824, 626 N.E.2d at 628. Similarly, although breach of fiduciary claims in the corporate context often arise in tort to which a three year statute of limitations would apply, *see Kirley v. Kirley,* 25 Mass. App.Ct. 651, 652–54, 521 N.E.2d 1041, 1042–43 (1988), it is also recognized that a fiduciary claim can also arise in contract. *See Barber v. Fox,* 36 Mass.App.Ct. 525, 529, 632 N.E.2d 1246, 1249 (1994) ("[G]ist of action" was that the defendant failed to do as promised; plaintiff's claim of breach of fiduciary duty, though sounding in tort, was governed by contract statute of limitations).

Again, in the instant case, it appears that the crux of the complaint is plaintiff's claim to tort-like damages for emotional distress, wrongful death and the like. Accordingly, it is most likely that a three year statute of limitations would apply, and the claims would be time-barred.

▮▮▮▮▮ Dismissal at this stage, however, may not be appropriate under the doctrine of equitable tolling and the plaintiff's assertion in her complaint that she suffered from a mental incapacity.[18] A court does not automatically toll the statute of limitations due to the existence of a mental disability. *See Cherella v. Phoenix Techs. Ltd.,* 32 Mass.App.Ct. 919, 920, 586 N.E.2d 29, 31 (1992) ("Mental disability has been accepted—sparingly—as a ground for tolling a statute of limitations but then in circumstances where a person literally could not act ....."). Moreover, the fact that the plaintiff was represented by counsel throughout *Andrews–Clarke I,* is a factor that does not support the plaintiff's request for a tolling of the statute. *See Lopez v. Citibank, N.A.,* 808 F.2d 905, 907 (1st Cir.1987) (plaintiff's alleged incapacity did not toll the statute of limitations in his employment discrimination action, where plaintiff was represented by counsel during period of his illness, and counsel pursued his employment claim administratively). However, "[u]nder Massachusetts law, the plaintiff bears the burden of presenting sufficient facts to take the case outside the statute of limitations." *Saenger Org. v. Nationwide Ins. Licensing Assocs., Inc.,* 119 F.3d 55, 65 (1st Cir.1997) (citations omitted). At this stage of the litigation, a factual record must be developed to determine whether the plaintiff actually suffered from a mental disability which would take the case out of the statute of limitations. *See Howe v. Johnston,* 39 Mass.App.Ct. 651, 654–55, 660 N.E.2d 380, 382 (1996); *see also John Beaudette, Inc. v. Sentry Ins. A Mut. Co.,* 94 F.Supp.2d 77, 106 (D.Mass.1999) (" 'When a defendant files a motion [for summary judgment] contending that [the] plaintiff's claims are time-barred, the plaintiff bears the burden of pointing to facts in the record that would justify a factfinder in concluding that the suit is timely' ") (citation omitted). Although the plaintiff may have no evidence to support her allegations of

---

**18.** Mass. Gen. Laws ch. 260, § 7 provides: "If the person entitled hereto is a minor, or is incapacitated by reason of mental illness when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed."

suffering from mental incapacity, it would be premature to reach that conclusion. *See Nunnally v. MacCausland,* 996 F.2d 1, 6 (1st Cir.1993) (issue of fact as to whether plaintiff's mental condition rendered her incapable of cooperating with counsel or pursuing claim on her own during limitations period); *Compare Cherella,* 32 Mass.App.Ct. at 920, 586 N.E.2d at 31 (declining to toll statute of limitations based on allegations in complaint related to mental incompetency due to absence of evidentiary support in affidavits offered by plaintiff).

More problematic than the named plaintiff's possible incapacity is the status of the children as minors who may be entitled to a tolling of the statute of limitations under Mass. Gen. Laws ch. 260, § 7. *See O'Brien v. Mass. Bay Transp. Auth.,* 405 Mass. 439, 444, 541 N.E.2d 334, 337 (1989) (a plaintiff enjoys the protections of ch. 260, § 7 even if the plaintiff's guardian is available to file suit on the plaintiff's behalf); *Gaudette v. Webb,* 362 Mass. 60, 72–73, 284 N.E.2d 222, 230 (1972) (failure of mother to bring wrongful death action on behalf of her children did not affect children's rights under ch. 260, § 7). The record is not developed enough to determine if the children can pursue the claims asserted even if their mother is time-barred from bringing the action on their behalf. No party

has briefed this issue. Because the defendants are entitled to dismissal of the plaintiffs claims under the principles of res judicata and ERISA preemption, this court declines to recommend dismissal of the plaintiff's claims on the basis of expiration of applicable statutes of limitations.

## CONCLUSION

For all the reasons stated herein, I recommend that the each defendants' Motion to Dismiss be ALLOWED.[19]

June 25, 2001.

---

**19.** The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply

with this rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4–5 (1st Cir.1998).