**Mariyah MONTAE, Plaintiff,**

v.

**AMERICAN AIRLINES, INC. and Massachusetts State Police, Defendants.**

**Civil Action No. 08–12064–NMG.**

United States District Court, D. Massachusetts.

Nov. 4, 2010.

Mariyah Montae, Burleson, TX, pro se.

Barbara L. Horan, Sonia L. Skinner, Fitzhugh & Mariani, LLP, Sarah M. Joss, Attorney General's Office, Boston, MA, for Defendants.

---

1. The nature of the alleged events is not clear but the plaintiff implies that she was kidnapped by the United States military in 2003

## MEMORANDUM & ORDER

GORTON, District Judge.

*Pro se* plaintiff Mariyah Montae ("Ms. Montae"), a California resident, has brought suit against American Airlines, Inc. ("AA") and the Massachusetts State Police ("MSP") alleging various federal and state claims related to plaintiff's arrest at Logan Airport in August 2007. Both AA and the MSP have moved to dismiss and those motions are before the Court.

### I. *Background*

#### A. Factual Background

Ms. Montae alleges that on August 21, 2007, she was scheduled to take an AA flight from Boston, Massachusetts, to Tucson, Arizona to visit her mother. Ms. Montae waited to board her flight in the AA Admirals Lounge at Logan Airport, an amenity for which she paid an additional $50. As she drank a glass of wine at the bar, she chatted with the bartender, mentioning that she suffered from Post–Traumatic Stress Disorder ("PTSD") due to "horrific" events she had experienced.[1] The plaintiff also told the bartender she was extremely tired and apologized for her "sloppy appearance."

Some time thereafter, two men sat down next to Ms. Montae at the bar and began conversing with her. One of the men chatted with her for approximately 30 minutes and bought her a sandwich and a drink before departing. Ms. Montae alleges that while she was eating her sandwich, an AA employee named Michelle Matheson ("Ms. Matheson") began to "harass and discriminate against [her] telling her bizarre things in a loud tone so the whole room could hear." Ms. Matheson also instructed other customers at the bar not to buy Ms.

and falsely arrested and beaten by the police in Arizona.

Montae any food or drinks, which made her feel uncomfortable and embarrassed. Ms. Montae tried to apologize to Ms. Matheson and explain that there had been a misunderstanding but Ms. Matheson was "hostile and belligerent".

In response to Ms. Matheson's alleged insults, Ms. Montae left the Admirals Lounge, stopping first at the desk to confirm that she would be refunded her $50. As she turned around to leave the desk, two state police officers handcuffed and arrested her without explaining why. Ms. Montae asked them what she had done but the officers purportedly told her to "shut up." Ms. Montae also alleges that the officers used excessive force against her, grabbing her arms violently and attaching the handcuffs too tightly. The plaintiff insists that, at the time of her arrest, she was neither drunk nor antagonistic.

The officers, John Ross and "John Doe", forcibly escorted Ms. Montae through the airport and took her to a holding cell. Ms. Montae alleges that she was pushed against the wall of the cell, causing contusions on her back and head. She believes she may have briefly lost consciousness when her head was slammed into the wall. One of the officers kicked the gate of her cell and told her "they would turn her into a lady". She also suggests that several unnamed officers sexually harassed her by saying they would "hump whores." Ms. Montae was frightened and began to have a panic attack but calmed down when the officers left. She recalls that medics arrived at the cell but she was afraid to tell them what had happened.

The plaintiff was released from the holding cell after several hours and ordered to appear in court the following morning. Feeling ill and traumatized, she spent the night at a hospital. At the arraignment, she was charged with disorderly conduct and assault and battery and was appointed a public defender. The police officer accused her of breaking his thumb which the plaintiff claims is impossible given that she was handcuffed. The charges were later dropped but Ms. Montae was not satisfied with the public defender's legal representation because she had encouraged the plaintiff to enter a guilty plea.

The plaintiff was re-booked on a flight to Tucson the day after her arraignment. The agent who re-booked the flight reportedly told the plaintiff's mother that the plaintiff "did nothing wrong" and that Ms. Matheson "was completely at fault for her irrational and unreasonable behavior." AA, however, refused to let her board the flight the second day. When the plaintiff asked an AA representative why she was not allowed to board, he rudely replied, "You know why." The plaintiff contends that AA's actions violate the Air Carrier Access Act of 1986 ("ACAA"), which prohibits air carriers from discriminating against individuals with physical or mental impairments.

Ms. Montae was re-booked (once again) on a flight the following morning at 6:00 a.m. and forced to spend the night at a hotel. Upon her arrival at the airport, however, she was again prohibited from boarding the flight and was ultimately forced to take a bus to Arizona to visit her mother. The plaintiff claims that the defendants' actions caused her serious emotional, physical and psychological harm and that she is currently in trauma counseling to address, inter alia, the events that occurred at Logan Airport in 2007.

The plaintiff asserts that both AA and the MSP discriminated against her on the basis of gender, disability (she suffers from PTSD), race (she is of partial Mexican descent), religion (she is a "student of many religions, including Islam") and political beliefs (she is a "well-known peace activist"). She brings claims against the

defendants pursuant to several federal statutes, including the Americans with Disabilities Act ("ADA"), the Civil Rights Act of 1964 and the ACAA, as well as for intentional infliction of emotional distress, negligence, harassment and violations of the First, Eighth and Fourteenth Amendments to the United States Constitution.

## B. Procedural History

On January 23, 2008, Ms. Montae filed a complaint against AA and "the Boston State Police Department" alleging unlawful arrest, sexual harassment, intimidation, lying in an official duty, racial profiling and violations of the ADA and various civil rights. That case was assigned Civil Action No. 08–10099 ("the January, 2008 case"). Because the complaint did not allege any facts underlying the allegations, the Court ordered the plaintiff to show cause why the action should not be dismissed or to file an amended complaint curing various pleading deficiencies. The plaintiff failed to do so in a timely manner and, accordingly, in July 2008, that case was dismissed *with prejudice*.

On December 1, 2008, Ms. Montae filed a new complaint against AA and the MSP, correcting the misnomer in the previous complaint and seeking application of Fed. R.Civ.P. 60 for her prior "excusable neglect." Given that the January, 2008 case had already been closed, the Clerk assigned a different case number to the plaintiff's new complaint, Civil Action No. 08–12064 ("the December, 2008 case"). The allegations and the named defendants in the new complaint were very similar but not identical to the original complaint. Notably, the new complaint identified Officer John Ross and several unnamed "John Doe" officers.

Despite some improvements, the new complaint failed to satisfy the pleading requirements of Fed.R.Civ.P. 8 because it did not link specific factual allegations of wrongdoing with particular defendants. Thus, on April 10, 2009, the Court ordered the plaintiff (once again) either to show cause within 35 days why the new action should not be dismissed or file an amended complaint curing the deficiencies. This time, the plaintiff complied with the Court's order and filed an amended complaint on May 13, 2009.

On October 14, 2009, the Court ordered summons to issue. The defendants were served in January, 2010 and several months later they separately moved to dismiss all the claims against them. The plaintiff has opposed those motions and, at a hearing held on August 4, 2010, the Court heard oral argument on them. At that time, the Court allowed the plaintiff additional time to retain counsel and submit supplemental oppositions to the pending motions but forewarned the plaintiff that if she did not do so the Court would decide the motions based on the arguments as presented. Thereafter, the Court allowed plaintiff an additional extension of time to retain counsel until October 1, 2010. On that date, the plaintiff requested a further extension of time, which the Court denied.

## II. *Analysis*

### A. MSP's Motion to Dismiss

The essence of the plaintiff's allegations against the MSP are that certain officers: 1) falsely arrested her, 2) used excessive force against her, 3) forcibly removed her from the AA Admirals Lounge, 4) failed to inform her of the charges against her, 5) placed her in a holding cell and 6) sexually and physically harassed her. Plaintiff maintains that in taking those actions, the MSP itself violated the ADA, the Eighth and Fourteenth Amendments and other "Civil Rights laws" and committed various torts, including malicious prosecution and

false arrest. The MSP moves to dismiss all of those claims pursuant to Fed. R.Civ.P. 12(b)(2) and 12(b)(6).

### 1. Plaintiff's ADA Claim and Sovereign Immunity

First, the MSP contends that the plaintiff's civil rights claims are barred by the Eleventh Amendment. The MSP, which is a state agency, cannot be sued directly unless it has waived its sovereign immunity or Congress has unequivocally abrogated that immunity pursuant to Section 5 of the Fourteenth Amendment. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The plaintiff has not alleged that the MSP has waived its immunity as to the civil rights claims she brings.

In certain cases, however, Title II of the ADA has been found to "validly abrogate" a state's sovereign immunity. *See United States v. Georgia,* 546 U.S. 151, 159, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006) ("Title II validly abrogates state sovereign immunity" insofar as it "creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment"); *Tennessee v. Lane,* 541 U.S. 509, 531, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (Title II constitutes valid abrogation as it applies to class of cases implicating disabled persons' fundamental right of access to the courts). Thus, if it were found that Congress properly abrogated the Commonwealth's sovereign immunity with respect to Ms. Montae's ADA claims against the MSP, her suit would not be barred by the Eleventh Amendment. Making that determination requires, however, resolution of two predicate questions: 1) whether Congress unequivocally expressed its intent to abrogate and 2) if so, whether it acted pursuant to a valid grant of constitutional authority. *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

Where possible, however, the Court should avoid unnecessarily answering constitutional questions such as the one posed here. *See Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445–46, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988). If the plaintiff cannot state a claim under the ADA, the Court need not address whether the MSP is entitled to Eleventh Amendment immunity. Thus, rather than proceeding directly to an abrogation analysis, the Court will first evaluate the merits of the plaintiff's ADA claim.

■ To state a claim under Title II of the ADA, the plaintiff must allege that 1) she is a qualified individual with a disability, 2) she was either excluded from participation in or denied the benefits of a public entity's services or programs and 3) such exclusion was by reason of her disability. 42 U.S.C. § 12132; *Parker v. Universidad de Puerto Rico,* 225 F.3d 1, 5 (1st Cir. 2000). In wrongful arrest cases, there are two theories under which to establish ADA liability: 1) where the police wrongfully arrest someone with a disability because they misperceive the effects of that disability as criminal activity and 2) where police fail reasonably to accommodate a person's disability during the investigation or arrest, causing the person to suffer greater injury than otherwise would occur. *Steeves v. City of Rockland,* 600 F.Supp.2d 143, 179 (D.Me.2009) (citing *Gohier v. Enright,* 186 F.3d 1216, 1220–21 (10th Cir. 1999)).

■ Here, assuming that the plaintiff's PTSD renders her "disabled" within the meaning of the ADA, she does not attribute her arrest to the MSP officers' misperception of the effects of that condition as criminal activity. To the contrary, she claims that the police officers were "fully aware of her disability because she had vocalized [it] to them." Moreover, she al-

leges that she was neither "drunk" nor acting in a "disorderly" fashion and that her "mental facilities were completely intact." Thus, because the plaintiff does not connect her arrest to any symptoms of PTSD, she does not allege sufficient facts to support a finding of ADA liability under the first theory of wrongful arrest.

█ Nor does the plaintiff state a claim under the second theory. Even if the officers were aware that she self-identified as being disabled, that knowledge must have been coupled with a failure on their part to accommodate her disability. The plaintiff alleges that the MSP officers' actions caused her to suffer "fear and trauma" but she makes no claim that she was injured to any greater extent than a non-disabled arrestee would have been. Thus, because Ms. Montae does not allege that the MSP officers wrongfully arrested her on account of her disability or failed to accommodate that disability, her ADA claims are untenable and the Court need not address the merits of the MSP's sovereign immunity defense.

### 2. Section 1983 Claims

Although the plaintiff has not directly invoked 42 U.S.C. § 1983, her claims could be construed as falling under the purview of that section. Such claims, however, cannot be pursued against the MSP because it is not a "person" within the meaning of § 1983. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). To the extent that the plaintiff seeks to state claims for violation of the Eighth and Fourteenth Amendments, she must bring such claims against the MSP officers in their *personal capacities*, not against the MSP itself.

### 3. False Arrest and Malicious Prosecution Claims

█ The plaintiff also attempts to state claims against the MSP for malicious prosecution and false arrest. The Massachusetts Tort Claims Act (presumably the plaintiff's source of jurisdiction for proceeding against the MSP) provides a limited waiver of the Commonwealth's sovereign immunity:

> Public employers shall be liable for injury or loss of property or personal injury or death caused by the *negligent* or *wrongful* act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . .

Mass. Gen. Laws ch. 258, § 2 (emphasis added). That waiver does not, however, apply to claims arising out of *intentional* torts such as false arrest or malicious prosecution. Mass. Gen. Laws. ch. 258, § 10(c). Accordingly, those claims are barred.

### 4. Other Tort Claims

Finally, the MSP asserts that, to the extent the complaint states other, non-intentional tort claims, those claims must also be dismissed. Pursuant to Mass. Gen. Laws ch. 258 § 4, in order to proceed on a claim against a public employer, a claimant must:

> have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose.

Only if the claim is denied, or the executive officer fails to settle, arbitrate, or resolve the claim within six months, may the claimant file suit. *Weaver v. Commonwealth*, 387 Mass. 43, 438 N.E.2d 831, 833–34 (1982). Written presentment is a condition precedent to recovery under Chapter 258 and is ordinarily strictly applied. *Vasys v. Metro. Dist. Comm'n*, 387 Mass. 51, 438 N.E.2d 836, 840 (1982).

The MSP argues that in order for the plaintiff to state a viable tort claim against the MSP, she would have been required to make a written presentment of that claim within two years after it accrued, i.e. on or before August 21, 2009. Having failed to make the required presentment, the plaintiff is foreclosed from alleging any non-intentional tort claims against the MSP.

The plaintiff responds that her failure to comply with the presentment requirement should be excused because it did not result in harm or inconvenience to the MSP. That argument was considered and ultimately rejected by the Supreme Judicial Court. *See Weaver*, 438 N.E.2d at 834–36 (rejecting notion that Commonwealth must be prejudiced by plaintiff's failure to comply with presentment requirement). The plaintiff's second argument is more convincing. She insists that, although she did not adhere to the technical aspects of the presentment requirement, she complied with the spirit of the rule because she 1) contacted the Civil Rights Division of the Attorney General's Office on numerous occasions, 2) filed a complaint with the Internal Affairs Division of the Massachusetts State Police and 3) when no response was forthcoming, expressed her intent to take legal action.

Given that the plaintiff is acting *pro se*, she should not be precluded from stating a colorable claim against the MSP solely on the basis of her failure to send the necessary presentment letter. It does not appear, however, that the plaintiff has properly alleged any torts that are not barred by sovereign immunity (e.g., negligence or negligent infliction of emotional distress). Thus, her compliance with the spirit of the presentment rule is immaterial.

### B. AA's Motion to Dismiss

AA moves to dismiss the plaintiff's amended complaint on three separate grounds: 1) res judicata, 2) failure to satisfy Fed.R.Civ.P. 60 and 3) failure to state a claim upon which relief can be granted.

### 1. Res Judicata

Broadly, the doctrine of *res judicata* prevents re-litigating claims that "were raised or could have been raised in [a prior] action." *Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 126 (1st Cir.2005) (citation omitted). Under federal law, the elements of *res judicata* are:

(1) a final judgment on the merits in an earlier action;

(2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits.

*Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1165 (1st Cir.1991).

In this case, the second and third elements are easily met. To determine whether sufficient subject matter identity exists between an earlier and a later suit, courts employ a transactional approach. *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir.1994) (citing *Kale*, 924 F.2d at 1166). This approach recognizes that a final judgment extinguishes subsequent claims "with respect to all or any part of the transaction ... out of which the action arose." *Gonzalez*, 27 F.3d at 755.

Here, the complaint in the December, 2008 case asserts virtually identical causes of action as those asserted in the January, 2008 case but adds new claims for violation of the ACAA, intentional infliction of emotional distress, negligence and other various torts. Those new claims arise from the same nucleus of operative facts and thus could have been, but were not, raised in the initial complaint. *See id.*

Furthermore, there is sufficient identicality of parties to trigger *res judicata*. But for the failure to name particular state

police officers in the prior suit, the parties in the two suits are identical.

The first factor of the *res judicata* analysis is slightly more complicated. AA contends that this factor is satisfied because the Court's dismissal of the prior action (the January, 2008 case) operates as a final judgment on the merits. Fed.R.Civ.P. 41(b) states:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision . . . and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

On July 23, 2008, the Court entered an order dismissing the January, 2008 case *with prejudice* for failure to comply with the Court's order of April 4, 2008. AA contends that because that dismissal was not for lack of jurisdiction, improper venue or failure to join a necessary party, Rule 41 dictates that the dismissal operates as an adjudication on the merits.

■ Although dismissal with prejudice generally triggers claim preclusion, an exception to that rule may be warranted in this case. The underlying principle behind *res judicata* is that, for claim preclusion to apply, a litigant first must have had a full and fair opportunity to litigate her claim. *Gonzalez*, 27 F.3d at 758. Here, although the plaintiff did not comply with the Court's order in the January, 2008 case (resulting in dismissal of the action), her failure to adhere to the Court's filing deadline should not bar her from litigating the merits of her case, particularly given that she is proceeding *pro se*. *See Hodges v. Publix Super Mkts.*, 372 Fed.Appx. 74, 76 (11th Cir.2010) ("The *res judicata* doctrine

may be qualified or even rejected when its application would contravene an overriding public policy or result in manifest injustice.") (citation omitted). Thus, *res judicata* does not mandate dismissal.

## 2. Rule 60 Request for Relief

■ AA also argues that relief from the Court's final judgment in the January, 2008 case pursuant to Fed.R.Civ.P. 60 is inappropriate. Rule 60 permits courts to relieve a party from a final judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). To warrant relief under that rule for excusable neglect, the plaintiff must offer, at the very minimum, "a convincing explanation as to why the neglect was excusable." *Cintron–Lorenzo v. Departamento de Asuntos del Consumidor*, 312 F.3d 522, 527 (1st Cir.2002). Rule 60(b) is a "vehicle for extraordinary relief" and motions invoking the rule should be allowed "only under extraordinary circumstances." *Davila–Alvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58, 64 (1st Cir.2001).

In the first complaint in the December, 2008 case, the plaintiff explained that she thought the previous complaint in the earlier case "would be null and void" due to the misnomer of the law enforcement defendants. She therefore invoked Rule 60, claiming that her failure to amend the complaint within the 35-day period constituted excusable neglect due to "family illness" and "suffering of trauma and fear." She alleged that, in addition to the physical and psychological trauma she had suffered as a result of the Logan Airport arrest, she was dealing with

> constant stalking, civil and sexual harassment, false criminal charges, threats, unlawful entry, vandalism of personal property and many more crimes.

She also asserted that the public defender assigned to her criminal case had advised her to let the suit "drop" until the criminal charges were resolved.

AA attempts to portray the plaintiff's decision to "drop" and re-file the suit as a "brazen attempt to manipulate the judicial process." It is more likely, however, that her actions were simply the product of her ignorance of the judicial system and the poor advice of her public defender. *Pro se* litigants are not exempt from the rules of civil procedure, *Rivera v. Riley,* 209 F.3d 24, 27–28 (1st Cir.2000), but the Court may, in certain situations, afford them greater leniency. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Here, although the proper course of action would have been to request a stay during the pendency of the criminal proceedings, the justification proffered by the plaintiff (assuming it is true), would constitute the kind of "extraordinary circumstances" envisioned by Rule 60(b). Thus, the plaintiff's complaint will not be dismissed for failure to satisfy the requirements of Fed.R.Civ.P. 60(b).

### 3. Failure to State a Claim

Finally, AA contends that even if the Court were to set aside the *res judicata* implications of its dismissal of the earlier action and grant the plaintiff relief from that judgment pursuant to Rule 60(b), the plaintiff's new complaint should still be dismissed for failure to state a claim upon which relief can be granted. This argument is more persuasive.

■ The amended complaint advances a multitude of claims against AA, including violation of the ADA, the Civil Rights Act of 1964 and the ACAA, as well as negligence, harassment, malicious prosecution (as instigators of a false arrest) and intentional infliction of emotional distress. In essence, the plaintiff alleges that 1) she is a person with a qualified disability (PTSD)

as well as a person belonging to various protected classes (by virtue of her gender, race, religion and political beliefs) and 2) AA denied her the benefit of its services. The plaintiff asserts vigorously that AA's refusal to let her board its flights was caused by its

> deeply rooted hatred for the disabled, a partial Mexican, a woman, a war resister with a reasonable belief in non-violence, religious tolerance and being perceived as weak prey for people who enjoy watching others suffer.

The plaintiff does not, however, allege any facts to support that brazen charge. She states that the airline "knew of her disability" because she told several employees that she suffered from PTSD but she pleads no facts demonstrating that it denied her services because of her disability or membership in a protected class. Without the allegation of any facts to substantiate her discrimination claims (and derivative claims of negligence, harassment, malicious prosecution and intentional infliction of emotional distress, which all seem to be predicated on the underlying discrimination claim), the plaintiff simply does not "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Accordingly, the amended complaint cannot survive AA's motion to dismiss.

### ORDER

In accordance with the foregoing, the motions to dismiss of the Massachusetts State Police (Docket No. 15) and American Airlines (Docket No. 23) are **ALLOWED**. **So ordered.**